Ryan Milun (Bar No. 043412006)
**THE MILUN LAW FIRM, LLC**
20 Commerce Drive, Suite 135
Cranford, New Jersey 07016
Phone: 862-702-5010 ext. 1001
ryan.milun@milunlaw.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DONALD P. MILIONE, D.C., | CIVIL ACTION NO.: |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| UHC/OXFORD HEALTH INSURANCE INC.; UNITED HEALTH CARE SERVICES; OPTUMHEALTH CARE SOLUTIONS, LLC; , | |
| Defendant. | |

Plaintiff, Donald P. Milione, D.C. ("Milione"), with a business address located at 330 E. 79 Street, New York, New York 10075 for his complaint against defendants UHC/Oxford Health Insurance ("OXFORD"); United Healthcare ("UHC"); and Optum Healthcare Solutions, LLC ("Optum"); , states:

### THE PARTIES

1.      UHC/Oxford Health Insurance ("OXFORD") is a corporation that sells insurance products, including health insurance plans and policies, within the State of New Jersey and specifically within this district.

2.      OptumHealth Care Solutions, LLC ("Optum") is a company that performs reviews on behalf of Oxford and UHC health plans and reviews appeals related to benefit determinations under the UHC health plans, within the State of New Jersey and specifically within this District.

3.      United HealthCare Service ("UHC") is a corporation that sells insurance products, including health insurance plans and policies, within the State of New Jersey and specifically within this district.

4.      Donald P. Milione ("Milione") provides chiropractic services to his patients in the New York, New Jersey and Connecticut area.

5.      During the relevant time period, Milione provided chiropractic services or as is otherwise described in the OXFORD plans as Habilitative Services or Manipulative Services to Alexander G who was covered by an insurance policy or plan sold by OXFORD and administered by Optum. Alexander G has assigned his claims to coverage under the OXFORD policy to Milione so that he can prosecute this action for the recovery of benefits improperly denied or underpaid by OXFORD under the plan covering Alexander G at the time the services were performed. Optum Healthcare Solutions performed the review of the claims submitted by Milione on behalf of Alexander G and Optum Healthcare improperly upheld the denial of coverage.

6.      Milione also provided chiropractic services or as is otherwise described in the OXFORD plans as Habilitative Services or Manipulative Services to Maxwell M who was covered by an insurance policy sold by OXFORD. Maxwell M has assigned his claims to coverage under the OXFORD plan to Milione so that he can prosecute this action for the recovery of benefits improperly denied or underpaid by OXFORD under the plan covering Maxwell M at the time the services were performed.

7.      Milione also provided chiropractic services or as is otherwise described in the OXFORD plans as Habilitative Services or Manipulative Services to Raquel O who was covered by an insurance policy sold by OXFORD and administered by Optum.   Raquel O has assigned her claims to coverage and benefits under the OXFORD plan to Milione so that he can prosecute this action for the recovery of benefits improperly denied or underpaid by OXFORD under the plan covering Raquel O at the time the services were performed.   Optum Healthcare Solutions performed the review of the claims submitted by Milione on behalf of Raquel O and Optum Healthcare improperly upheld the denial of coverage.

8.      Milione also provided chiropractic services or as is otherwise described in the OXFORD plans as Habilitative Services or Manipulative Services to Robert P who was covered by an insurance policy sold by OXFORD and

administered by Optum.  Robert P has assigned her claims to coverage and benefits under the OXFORD plan to Milione so that he can prosecute this action for the recovery of benefits improperly denied or underpaid by OXFORD under the plan covering Robert P at the time the services were performed.  Optum Healthcare Solutions performed the review of the claims submitted by Milione on behalf of Robert P and Optum Healthcare improperly upheld the denial of coverage.

9.     Milione also provided chiropractic services or as is otherwise described in the OXFORD plans as Habilitative Services or Manipulative Services to Vanessa H who was covered by an insurance policy sold by OXFORD and administered by Optum.  Vanessa H has assigned her claims to coverage and benefits under the OXFORD plan to Milione so that he can prosecute this action for the recovery of benefits improperly denied or underpaid by OXFORD under the plan covering Vanessa H at the time the services were performed.  Optum Healthcare Solutions performed the review of the claims submitted by Milione on behalf of Vanessa H and Optum Healthcare improperly upheld the denial of coverage.

10.     Milione also provided chiropractic services or as is otherwise described in the OXFORD plans as Habilitative Services or Manipulative Services to Erica B who was covered by an insurance policy sold by OXFORD and administered by Optum.  Erica B has assigned her claims to coverage and benefits

under the OXFORD plan to Milione so that he can prosecute this action for the recovery of benefits improperly denied or underpaid by OXFORD under the plan covering Erica B at the time the services were performed.  Optum Healthcare Solutions performed the review of the claims submitted by Milione on behalf of Erica B and Optum Healthcare improperly upheld the denial of coverage.

11.    Milione also provided chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services to Wendy H who was covered by an insurance policy sold by UHC. Wendy H has properly assigned her claims to coverage and benefits under the UHC plan so that Milione can prosecute this action for the recovery of benefits improperly denied or underpaid by UHC under the plan covering Wendy H at the time the services were performed.

12.    Milione also provided chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services to Vipul P who was covered by an insurance policy sold by UHC.  Vipul P has properly assigned his claims to coverage and benefits under the UHC plan so that Milione can prosecute this action for the recovery of benefits improperly denied or underpaid by UHC under the plan covering Vipul P at the time the services were performed.

13.     Milione also provided chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services to Xinyu P who was covered by an insurance policy sold by UHC.  Xinyu P has properly assigned her claims to coverage and benefits under the UHC plan so that Milione can prosecute this action for the recovery of benefits improperly denied or underpaid by UHC under the plan covering Xinyu P at the time the services were performed.

14.     Milione also provided chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services to Monica A who was covered by an insurance policy sold by UHC and administered by Optum.  Monica A has assigned her claims to coverage and benefits under the UHC plan to Milione so that he can prosecute this action for the recovery of benefits improperly denied or underpaid by UHC under the plan covering Monica A at the time the services were performed.  Optum Healthcare Solutions performed the review of the claims submitted by Milione on behalf of Monica A and Optum Healthcare improperly upheld the denial of coverage.

15.     Milione also provided chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services to Philip K who was covered by an insurance policy sold by UHC and administered by Optum.  Philip K has assigned his claims to coverage and benefits under the

UHC plan to Milione so that he can prosecute this action for the recovery of benefits improperly denied or underpaid by UHC under the plan covering Philip K at the time the services were performed. Optum Healthcare Solutions performed the review of the claims submitted by Milione on behalf of Philip K and Optum Healthcare improperly upheld the denial of coverage.

16.    Milione also provided chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services to Simon A who was covered by an insurance policy sold by UHC. Simon A has properly assigned his claims to coverage and benefits under the UHC plan so that Milione can prosecute this action for the recovery of benefits improperly denied or underpaid by UHC under the plan covering Simon A at the time the services were performed.

17.    Milione also provided chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services to Tyler K who was covered by an insurance policy sold by UHC. Tyler K has properly assigned his claims to coverage and benefits under the UHC plan so that Milione can prosecute this action for the recovery of benefits improperly denied or underpaid by UHC under the plan covering Tyler K at the time the services were performed.

18.    Milione also provided chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services to Raymond VN who was covered by an insurance policy sold by UHC.  Raymond VN has properly assigned his claims to coverage and benefits under the UHC plan so that Milione can prosecute this action for the recovery of benefits improperly denied or underpaid by UHC under the plan covering Raymond VN at the time the services were performed.

19.    Milione also provided chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services to Cassandra C who was covered by an insurance policy sold by UHC.  Cassandra C has properly assigned her claims to coverage and benefits under the UHC plan so that Milione can prosecute this action for the recovery of benefits improperly denied or underpaid by UHC under the plan covering Cassandra C at the time the services were performed.

20.    Milione also provided chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services to Elizabeth L who was covered by an insurance policy sold by UHC and administered by Optum.  Elizabeth L has assigned her claims to coverage and benefits under the UHC plan to Milione so that he can prosecute this action for the recovery of benefits improperly denied or underpaid by UHC under the plan

covering Elizabeth L at the time the services were performed.  Optum Healthcare Solutions performed the review of the claims submitted by Milione on behalf of Elizabeth L and Optum Healthcare improperly upheld the denial of coverage.

21.    Milione also provided chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services to Deiter L who was covered by an insurance policy sold by UHC.  Deiter L has properly assigned his claims to coverage and benefits under the UHC plan so that Milione can prosecute this action for the recovery of benefits improperly denied or underpaid by UHC under the plan covering Deiter L at the time the services were performed.

22.    Milione also provided chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services to Evan H who was covered by an insurance policy sold by UHC.  Evan H has properly assigned his claims to coverage and benefits under the UHC plan so that Milione can prosecute this action for the recovery of benefits improperly denied or underpaid by UHC under the plan covering Evan H the time the services were performed.

23.    Milione also provided chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services to Evelyse F who was covered by an insurance policy sold by UHC.  Evelyse F has

properly assigned her claims to coverage and benefits under the UHC plan so that Milione can prosecute this action for the recovery of benefits improperly denied or underpaid by UHC under the plan covering Evelyse F at the time the services were performed.

24.    Milione also provided chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services to Hye KY who was covered by an insurance policy sold by UHC.  Hye KY has properly assigned her claims to coverage and benefits under the UHC plan so that Milione can prosecute this action for the recovery of benefits improperly denied or underpaid by UHC under the plan covering Hye KY at the time the services were performed.

25.    Milione also provided chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services to Mark L who was covered by an insurance policy sold by UHC.  Mark L has properly assigned his claims to coverage and benefits under the UHC plan so that Milione can prosecute this action for the recovery of benefits improperly denied or underpaid by UHC under the plan covering Mark L at the time the services were performed.

26.    Milione also provided chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services to

Onur I who was covered by an insurance policy sold by UHC.  Onur I has properly assigned his claims to coverage and benefits under the UHC plan so that Milione can prosecute this action for the recovery of benefits improperly denied or underpaid by UHC under the plan covering Onur I at the time the services were performed.

27.   Milione also provided chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services to Barbara N who was covered by an insurance policy sold by UHC.  Barabara N has properly assigned her claims to coverage and benefits under the UHC plan so that Milione can prosecute this action for the recovery of benefits improperly denied or underpaid by UHC under the plan covering Barabara N at the time the services were performed.

28.   Milione also provided chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services to Jin F who was covered by an insurance policy sold by UHC.  Jin F has properly assigned his claims to coverage and benefits under the UHC plan so that Milione can prosecute this action for the recovery of benefits improperly denied or underpaid by UHC under the plan covering Jin F at the time the services were performed.

29.     Milione also provided chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services to Michael G who was covered by an insurance policy sold by UHC.  Michael G has properly assigned his claims to coverage and benefits under the UHC plan so that Milione can prosecute this action for the recovery of benefits improperly denied or underpaid by UHC under the plan covering Michael G at the time the services were performed.

30.     Milione also provided chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services to Peter C who was covered by an insurance policy sold by UHC.  Peter C has properly assigned his claims to coverage and benefits under the UHC plan so that Milione can prosecute this action for the recovery of benefits improperly denied or underpaid by UHC under the plan covering Peter C at the time the services were performed.

31.     Milione also provided chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services to Timur O who was covered by an insurance policy sold by UHC.  Timur O has properly assigned his claims to coverage and benefits under the UHC plan so that Milione can prosecute this action for the recovery of benefits improperly denied or

underpaid by UHC under the plan covering Timur O at the time the services were performed.

32.    Milione also provided chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services to Caityln R who was covered by an insurance policy sold by UHC and administered by Optum.  Caitlyn R has assigned her claims to coverage and benefits under the UHC plan to Milione so that he can prosecute this action for the recovery of benefits improperly denied or underpaid by UHC under the plan covering Caitlyn R at the time the services were performed.  Optum Healthcare Solutions performed the review of the claims submitted by Milione on behalf of Caitlyn R and Optum Healthcare improperly upheld the denial of coverage.

33.    Milione also provided chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services to Jochen R who was covered by an insurance policy sold by UHC.  Jochen R has properly assigned his claims to coverage and benefits under the UHC plan so that Milione can prosecute this action for the recovery of benefits improperly denied or underpaid by UHC under the plan covering Jochen R at the time the services were performed.

34.    Finally, Milione also provided chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services to

Olga K who was covered by an insurance policy sold by UHC.  Olga K has assigned her claims to coverage and benefits under the UHC plan to Milione so that he can prosecute this action for the recovery of benefits improperly denied or underpaid by UHC under the plan covering Olga K at the time the services were performed.

## JURISDICTION AND VENUE

35.   This Court has federal question jurisdiction over this action under 28 USC §1331 and under the Employee Retirement Income Security Act ("ERISA") 29 U.S.C. §1132 as this action involves a claim by Milione for his patients' benefits under an employee benefit plan regulated and governed under ERISA.

36.   Venue exists in this District under 28 USC §1391 in that the defendants reside in this district as entities that are "subject to the Court's personal jurisdiction with respect to the civil action in question" and the Defendants regularly conduct business in this district including the sale of insurance policies to citizens of this District.

## NATURE AND BACKGROUND OF THIS ACTION

37.   This action governed by Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, arises out of the repeated failure of Defendants to provide benefits for medically necessary treatment of several

patients of plaintiff Dr. Donald Milione, D.C. ("Milione"). Defendants set up one obstacle after another to Plaintiff's quest to have his services covered.

38.     In addition, to the extent the health plans covering the patients are not governed by ERISA, Milione requests that this Court exercise supplemental jurisdiction over the various patient claims for defendants failure to pay or underpaying for the benefits provided.

39.     As described below, Defendants repeatedly denied or underpaid Milione's patients claims for various services, including Habilitative Services or Manipulative Services such as Nerve Conduction Studies and in denying or underpaying the claims, routinely ignored relevant information submitted by Milione during the claims process and refused to properly consider the appeals filed by Milione on behalf of his patients.

40.     Defendants not only made erroneous benefit determinations that should be reversed, they also grievously violated their duties as ERISA fiduciaries.

41.     Defendants have failed to act prudently and in the interests of Milione's patients, the plan beneficiaries, have failed to follow written plan documents, and have failed to decide the claims under a full and fair claims procedure as set forth in ERISA's claims regulations.  See 29 U.S.C. §§ 1104, 1133; 29 C.F.R. § 2560.503-1.

42.     Plaintiff seeks payment of all benefits due to his patients under the valid assignments he received prior to providing services and Plaintiff further seeks injunctive and other equitable relief requiring Defendants to comply with the requirements of ERISA in the future with regard to additional services provided to the patients at issue in this case.

*Alexander G:*

43.     Alexander G was a patient of Milione and OXFORD denied benefits or significantly underpaid for certain services performed on the following dates: March 9, 2022, March 14, 2022, April 4, 2022, April 11, 2022, April 18, 2022, April 25, 2022, May 2, 2022, May 9, 2022, May 16, 2022, June 1, 2022, June 16, 2022, June 20, 2022, July 6, 2022, July 11, 2022.

44.     Alexander G was, at all relevant times, a covered beneficiary under a benefit plan pursuant to which, Alexander G is entitled to health care benefits.

45.     The chiropractic services or as is otherwise described in the OXFORD plans as Habilitative Services or Manipulative Services provided by Milione are covered services under the OXFORD plan and accordingly, Milione is entitled to payment for the services provided.

46.     Manipulative Treatment is defined as "a form of care provided by chiropractors for diagnosed muscle, nerve and joint problems."

47.     In fact, under the Plan, if prior authorization is obtained, as it was by Milione prior to the treatment of Alexander G, Milione, as an out of network provider is entitled to a payment of 60% of the Allowed Amount, which are determined under the Plan as either a percentage of the Centers for Medicare and Medicaid services; a gap methodology which may be based off the providers billed charges; or a negotiated rate between the provider and OXFORD.

48.     Historically, OXFORD has paid Milione 60-70% of the billed charges for the Manipulative Treatments provided to Alexander G.

49.     When Alexander G became a patient of Milione, he signed an assignment of benefits, which provided that:

> I hereby assign all applicable health insurance benefits to which I and/or my dependents are entitle to Provider [defined as Milione]. . . I hereby authorize Provider to submit claims, on my and/or my dependent's behalf, to the benefit plan (or its administrator) listed on the current insurance card I provided to Provider, in good faith. I also hereby instruct my benefit plan (or its administrator) to pay Provider directly for services rendered to me or my dependents.  To the extent that my current policy prohibits direct payment to Provider, I hereby instruct and direct my benefit plan (or its administrator) to provide documentation stating such non-assignment to myself and Provider upon request. Upon proof of such non-assignment, I instruct my benefit plan (or its administrator) to make out the check to me and mail it directly to Provider.

50.     In addition, Alexander G signed an authorization allowing Milione to act as Alexander G's "Authorized Representative" in connection with any "claim, right, or cause in action that [she] might have under such insurance policy and/or

benefit plan" and the right to "pursue such claim, right or cause of action in connection with said insurance policy and/or benefit plan."

51.    The claims for the denied procedures were delivered to OXFORD with relevant medical records and other information supporting the claim; however, OXFORD still refused to pay for these covered benefits as it had in the past, inexplicably claiming on various occasions that the medical records were not received or were not sufficient to support the medical necessity of the procedures.

52.    OXFORD's denial or underpayment of benefits was not only untimely, but it was also completely improper, arbitrary, and contrary to the benefits plan.

53.    The total for all of the required services that were improperly denied or underpaid by OXFORD for Alexander G is: **$20,265.08.**

54.    After the benefits were improperly denied or underpaid, Milione (on behalf of Alexander G) went through the entire available appeal process and inexplicably, all appeals were denied and the required payment remains outstanding.

55.    To date, the claim for benefits for Alexander G remains denied and unpaid.

*Maxwell M:*

56.     Maxwell M was a patient of Milione and OXFORD denied benefits or significantly underpaid for certain services performed on the following dates: April 24, 2023, April 25, 2023, April 26, 2023.

57.     Maxwell M was, at all relevant times, a covered beneficiary under a benefit plan pursuant to which, Maxwell M is entitled to health care benefits.

58.     The chiropractic services or as is otherwise described in the OXFORD plans as Habilitative Services or Manipulative Services provided by Milione are covered services under the OXFORD plan and accordingly, Milione is entitled to payment for the services provided.

59.     Manipulative Treatment is defined as "a form of care provided by chiropractors for diagnosed muscle, nerve and joint problems."

60.     In fact, under the Plan, if prior authorization is obtained, as it was by Milione prior to the treatment of Maxwell M, Milione, as an out of network provider is entitled to a payment of 60% of the Allowed Amount, which are determined under the Plan as either a percentage of the Centers for Medicare and Medicaid services; a gap methodology which may be based off the providers billed charges; or a negotiated rate between the provider and OXFORD.

61.     Historically, OXFORD has paid Milione 60-70% of the billed charges for the Manipulative Treatments provided to Maxwell M.

62.     When Maxwell M became a patient of Milione, he signed an assignment of benefits, which provided that:

> I hereby assign all applicable health insurance benefits to which I and/or my dependents are entitle to Provider [defined as Milione]. . . I hereby authorize Provider to submit claims, on my and/or my dependent's behalf, to the benefit plan (or its administrator) listed on the current insurance card I provided to Provider, in good faith. I also hereby instruct my benefit plan (or its administrator) to pay Provider directly for services rendered to me or my dependents.  To the extent that my current policy prohibits direct payment to Provider, I hereby instruct and direct my benefit plan (or its administrator) to provide documentation stating such non-assignment to myself and Provider upon request. Upon proof of such non-assignment, I instruct my benefit plan (or its administrator) to make out the check to me and mail it directly to Provider.

63.     In addition, Maxwell M signed an authorization allowing Milione to act as Maxwell M's "Authorized Representative" in connection with any "claim, right, or cause in action that [she] might have under such insurance policy and/or benefit plan" and the right to "pursue such claim, right or cause of action in connection with said insurance policy and/or benefit plan."

64.     The claims for the denied procedures were delivered to OXFORD with relevant medical records and other information supporting the claim; however, OXFORD still refused to pay for these covered benefits, inexplicably claiming on various occasions that the medical records were not received or were not sufficient to support the medical necessity of the procedures.

65.    OXFORD's denial or underpayment of benefits was not only untimely, but it was also completely improper, arbitrary, and contrary to the benefits plan.

66.    The total for all of the required services that were improperly denied or underpaid by OXFORD for Maxwell M is: **$8,141.48.**

67.    After the benefits were improperly denied or underpaid, Milione (on behalf of Maxwell M) went through the entire available appeal process and inexplicably, all appeals were denied and the required payment remains outstanding.

68.    To date, the claim for benefits for Maxwell M remains denied and unpaid.

*Raquel O:*

69.    Raquel O was a patient of Milione and OXFORD denied benefits or significantly underpaid for certain services performed on the following dates:
April 25, 2022, April 27, 2022, May 11, 2022

70.    Raquel O was, at all relevant times, a covered beneficiary under a benefit plan pursuant to which, Raquel O is entitled to health care benefits.

71.    The chiropractic services or as is otherwise described in the OXFORD plans as Habilitative Services or Manipulative Services provided by Milione are

covered services under the OXFORD plan and accordingly, Milione is entitled to payment for the services provided.

72.     Manipulative Treatment is defined as "a form of care provided by chiropractors for diagnosed muscle, nerve and joint problems."

73.     In fact, under the Plan, if prior authorization is obtained, as it was by Milione prior to the treatment of Raquel O, Milione, as an out of network provider is entitled to a payment of 60% of the Allowed Amount, which are determined under the Plan as either a percentage of the Centers for Medicare and Medicaid services; a gap methodology which may be based off the providers billed charges; or a negotiated rate between the provider and OXFORD.

74.     Historically, OXFORD has paid Milione 60-70% of the billed charges for the Manipulative Treatments provided to Raquel O.

75.     When Raquel O became a patient of Milione, she signed an assignment of benefits, which provided that:

> I hereby assign all applicable health insurance benefits to which I and/or my dependents are entitle to Provider [defined as Milione]. . . I hereby authorize Provider to submit claims, on my and/or my dependent's behalf, to the benefit plan (or its administrator) listed on the current insurance card I provided to Provider, in good faith. I also hereby instruct my benefit plan (or its administrator) to pay Provider directly for services rendered to me or my dependents.  To the extent that my current policy prohibits direct payment to Provider, I hereby instruct and direct my benefit plan (or its administrator) to provide documentation stating such non-assignment to myself and Provider upon request. Upon proof of such non-assignment, I instruct my

benefit plan (or its administrator) to make out the check to me and mail it directly to Provider.

76.     In addition, Raquel O signed an authorization allowing Milione to act as Raquel O's "Authorized Representative" in connection with any "claim, right, or cause in action that [she] might have under such insurance policy and/or benefit plan" and the right to "pursue such claim, right or cause of action in connection with said insurance policy and/or benefit plan."

77.     The claims for the denied procedures were delivered to OXFORD with relevant medical records and other information supporting the claim; however, OXFORD still refused to pay for these covered benefits, inexplicably claiming on various occasions that the medical records were not received or were not sufficient to support the medical necessity of the procedures.

78.     OXFORD's denial or underpayment of benefits was not only untimely, but it was also completely improper, arbitrary, and contrary to the benefits plan.

79.     The total for all of the required services that were improperly denied or underpaid by OXFORD for Raquel O is: **$8,097.53**

80.     After the benefits were improperly denied or underpaid, Milione (on behalf of Raquel O) went through the entire available appeal process and inexplicably, all appeals were denied and the required payment remains outstanding.

81.    To date, the claim for benefits for Raquel O remains denied and unpaid.

*Robert P*

82.    Robert P was a patient of Milione and OXFORD denied benefits or significantly underpaid for certain services performed on the following dates: September 23, 2019.

83.    Robert P was, at all relevant times, a covered beneficiary under a benefit plan pursuant to which, Robert P is entitled to health care benefits.

84.    The chiropractic services or as is otherwise described in the OXFORD plans as Habilitative Services or Manipulative Services provided by Milione are covered services under the OXFORD plan and accordingly, Milione is entitled to payment for the services provided.

85.    Manipulative Treatment is defined as "a form of care provided by chiropractors for diagnosed muscle, nerve and joint problems."

86.    In fact, under the Plan, if prior authorization is obtained, as it was by Milione prior to the treatment of Robert P, Milione, as an out of network provider is entitled to a payment of 60% of the Allowed Amount, which are determined under the Plan as either a percentage of the Centers for Medicare and Medicaid services; a gap methodology which may be based off the providers billed charges; or a negotiated rate between the provider and OXFORD.

87.     Historically, OXFORD has paid Milione 60-70% of the billed charges for the Manipulative Treatments provided to Robert P.

88.     When Robert P became a patient of Milione, he signed an assignment of benefits, which provided that:

> I hereby assign all applicable health insurance benefits to which I and/or my dependents are entitled to Provider [defined as Milione]. . . I hereby authorize Provider to submit claims, on my and/or my dependent's behalf, to the benefit plan (or its administrator) listed on the current insurance card I provided to Provider, in good faith. I also hereby instruct my benefit plan (or its administrator) to pay Provider directly for services rendered to me or my dependents.  To the extent that my current policy prohibits direct payment to Provider, I hereby instruct and direct my benefit plan (or its administrator) to provide documentation stating such non-assignment to myself and Provider upon request. Upon proof of such non-assignment, I instruct my benefit plan (or its administrator) to make out the check to me and mail it directly to Provider.

89.     In addition, Robert P signed an authorization allowing Milione to act as Robert P's "Authorized Representative" in connection with any "claim, right, or cause in action that [she] might have under such insurance policy and/or benefit plan" and the right to "pursue such claim, right or cause of action in connection with said insurance policy and/or benefit plan."

90.     The claims for the denied procedures were delivered to OXFORD with relevant medical records and other information supporting the claim; however, OXFORD still refused to pay for these covered benefits, inexplicably

claiming on various occasions that the medical records were not received or were not sufficient to support the medical necessity of the procedures.

91.     OXFORD's denial or underpayment of benefits was not only untimely, but it was also completely improper, arbitrary, and contrary to the benefits plan.

92.     The total for all of the required services that were improperly denied or underpaid by OXFORD for Robert P is: **$3,631.81.**

93.     After the benefits were improperly denied or underpaid, Milione (on behalf of Robert P) went through the entire available appeal process and inexplicably, all appeals were denied and the required payment remains outstanding.

94.     To date, the claim for benefits for Robert P remains denied and unpaid.

*Vanessa H:*

95.     Vanessa H was a patient of Milione and OXFORD denied benefits or significantly underpaid for certain services performed on the following dates: November 25, 2020, December 7, 2020, December 8, 2020, December 11, 2020, December 14, 2020, December 16, 2020, December 22, 2020.

96.     Vanessa H was, at all relevant times, a covered beneficiary under a benefit plan pursuant to which, Vanessa H is entitled to health care benefits.

97.    The chiropractic services or as is otherwise described in the OXFORD plans as Habilitative Services or Manipulative Services provided by Milione are covered services under the OXFORD plan and accordingly, Milione is entitled to payment for the services provided.

98.    Manipulative Treatment is defined as "a form of care provided by chiropractors for diagnosed muscle, nerve and joint problems."

99.    In fact, under the Plan, if prior authorization is obtained, as it was by Milione prior to the treatment of Vanessa H, Milione, as an out of network provider is entitled to a payment of 60% of the Allowed Amount, which are determined under the Plan as either a percentage of the Centers for Medicare and Medicaid services; a gap methodology which may be based off the providers billed charges; or a negotiated rate between the provider and OXFORD.

100.   Historically, OXFORD has paid Milione 60-70% of the billed charges for the Manipulative Treatments provided to Vanessa H.

101.   When Vanessa H became a patient of Milione, she signed an assignment of benefits, which provided that:

> I hereby assign all applicable health insurance benefits to which I and/or my dependents are entitle to Provider [defined as Milione]. . . I hereby authorize Provider to submit claims, on my and/or my dependent's behalf, to the benefit plan (or its administrator) listed on the current insurance card I provided to Provider, in good faith. I also hereby instruct my benefit plan (or its administrator) to pay Provider directly for services rendered to me or my dependents.  To the extent that my current policy prohibits direct payment to Provider, I hereby

instruct and direct my benefit plan (or its administrator) to provide documentation stating such non-assignment to myself and Provider upon request. Upon proof of such non-assignment, I instruct my benefit plan (or its administrator) to make out the check to me and mail it directly to Provider.

102.   In addition, Vanessa H signed an authorization allowing Milione to act as Vanessa H's "Authorized Representative" in connection with any "claim, right, or cause in action that [she] might have under such insurance policy and/or benefit plan" and the right to "pursue such claim, right or cause of action in connection with said insurance policy and/or benefit plan."

103.   The claims for the denied procedures were delivered to OXFORD with relevant medical records and other information supporting the claim; however, OXFORD still refused to pay for these covered benefits, inexplicably claiming on various occasions that the medical records were not received or were not sufficient to support the medical necessity of the procedures.

104.   OXFORD's denial or underpayment of benefits was not only untimely, but it was also completely improper, arbitrary, and contrary to the benefits plan.

105.   The total for all of the required services that were improperly denied or underpaid by OXFORD for Vanessa H is: **$8,747.98.**

106.   After the benefits were improperly denied or underpaid, Milione (on behalf of Vanessa H) went through the entire available appeal process and

inexplicably, all appeals were denied and the required payment remains outstanding.

107.   To date, the claim for benefits for Vanessa H remains denied and unpaid.

*Erica B:*

108.   Erica B was a patient of Milione and OXFORD denied benefits or significantly underpaid for certain services performed on the following dates: August 20, 2020, September 9, 2020.

109.   Erica B was, at all relevant times, a covered beneficiary under a benefit plan pursuant to which, Erica B is entitled to health care benefits.

110.   The chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services provided by Milione are covered services under the OXFORD plan and accordingly, Milione is entitled to payment for the services provided.

111.   Manipulative Treatment is defined as "a form of care provided by chiropractors for diagnosed muscle, nerve and joint problems."

112.   In fact, under the Plan, if prior authorization is obtained, as it was by Milione prior to the treatment of Erica B, Milione, as an out of network provider is entitled to a payment of 60% of the Allowed Amount, which are determined under the Plan as either a percentage of the Centers for Medicare and Medicaid services;

a gap methodology which may be based off the providers billed charges; or a negotiated rate between the provider and OXFORD.

113.   Historically, OXFORD has paid Milione 60-70% of the billed charges for the Manipulative Treatments provided to Erica B.

114.   When Erica B became a patient of Milione, she signed an assignment of benefits, which provided that:

> I hereby assign all applicable health insurance benefits to which I and/or my dependents are entitle to Provider [defined as Milione]. . . I hereby authorize Provider to submit claims, on my and/or my dependent's behalf, to the benefit plan (or its administrator) listed on the current insurance card I provided to Provider, in good faith. I also hereby instruct my benefit plan (or its administrator) to pay Provider directly for services rendered to me or my dependents.  To the extent that my current policy prohibits direct payment to Provider, I hereby instruct and direct my benefit plan (or its administrator) to provide documentation stating such non-assignment to myself and Provider upon request. Upon proof of such non-assignment, I instruct my benefit plan (or its administrator) to make out the check to me and mail it directly to Provider.

115.   In addition, Erica B signed an authorization allowing Milione to act as Erica B's "Authorized Representative" in connection with any "claim, right, or cause in action that [she] might have under such insurance policy and/or benefit plan" and the right to "pursue such claim, right or cause of action in connection with said insurance policy and/or benefit plan."

116.   The claims for the denied procedures were delivered to OXFORD with relevant medical records and other information supporting the claim;

however, OXFORD still refused to pay for these covered benefits, inexplicably claiming on various occasions that the medical records were not received or were not sufficient to support the medical necessity of the procedures.

117.   OXFORD's denial or underpayment of benefits was not only untimely, but it was also completely improper, arbitrary, and contrary to the benefits plan.

118.   The total for all of the required services that were improperly denied or underpaid by OXFORD for Erica B is: **$2,688.36.**

119.   After the benefits were improperly denied or underpaid, Milione (on behalf of Erica B) went through the entire available appeal process and inexplicably, all appeals were denied and the required payment remains outstanding.

120.   To date, the claim for benefits for Erica B remains denied and unpaid.

*Wendy H:*

121.   Wendy H was a patient of Milione and UHC denied benefits or significantly underpaid for certain services performed on the following dates:

July 14, 2020, July 14, 2020, July 15, 2020, July 20, 2020, July 21, 2020, July 22, 2020, July 27, 2020, July 28, 2020, July 29, 2020, August 3, 2020, August 4, 2020, August 5, 2020, August 10, 2020, August 11, 2020, August 12, 2020, August 17, 2020, August 18, 2020, August 19, 2020, August 26, 2020, August 27, 2020,

August 31, 2020, September 1, 2020, September 2, 2020, September 8, 2020, September 9, 2020, September 21, 2020, September 23, 2020, September 28, 2020, October 5, 2020, October 7, 2020, October 12, 2020, October 19, 2020, October 21, 2020, October 26, 2020, November 2, 2020, November 4, 2020, November 9, 2020, November 16, 2020, November 23, 2020, November 30, 2020 ,December 16, 2020, December 18, 2020, December 21, 2020, December 22, 2020

122.   Wendy H was, at all relevant times, a covered beneficiary under a benefit plan pursuant to which, Wendy H is entitled to health care benefits.

123.   The chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services provided by Milione are covered services under the UHC plan and accordingly, Milione is entitled to payment for the services provided.

124.   Manipulative Treatment is defined as "a form of care provided by chiropractors for diagnosed muscle, nerve and joint problems."

125.   In fact, under the Plan, if prior authorization is obtained, as it was by Milione prior to the treatment of Wendy H, Milione, as an out of network provider is entitled to a payment of 60% of the Allowed Amount, which are determined under the Plan as either a percentage of the Centers for Medicare and Medicaid services; a gap methodology which may be based off the providers billed charges; or a negotiated rate between the provider and UHC.

126.   Historically, UHC has paid Milione 60-70% of the billed charges for the Manipulative Treatments provided to Wendy H.

127.   When Wendy H became a patient of Milione, she signed an assignment of benefits, which provided that:

> I hereby assign all applicable health insurance benefits to which I and/or my dependents are entitle to Provider [defined as Milione]. . . I hereby authorize Provider to submit claims, on my and/or my dependent's behalf, to the benefit plan (or its administrator) listed on the current insurance card I provided to Provider, in good faith. I also hereby instruct my benefit plan (or its administrator) to pay Provider directly for services rendered to me or my dependents.  To the extent that my current policy prohibits direct payment to Provider, I hereby instruct and direct my benefit plan (or its administrator) to provide documentation stating such non-assignment to myself and Provider upon request. Upon proof of such non-assignment, I instruct my benefit plan (or its administrator) to make out the check to me and mail it directly to Provider.

128.   In addition, Wendy H signed an authorization allowing Milione to act as Wendy H's "Authorized Representative" in connection with any "claim, right, or cause in action that [she] might have under such insurance policy and/or benefit plan" and the right to "pursue such claim, right or cause of action in connection with said insurance policy and/or benefit plan."

129.   The claims for the denied procedures were delivered to UHC with relevant medical records and other information supporting the claim; however, UHC still refused to pay for these covered benefits, inexplicably claiming on

various occasions that the medical records were not received or were not sufficient to support the medical necessity of the procedures.

130.   UHC's denial or underpayment of benefits was not only untimely, but it was also completely improper, arbitrary, and contrary to the benefits plan.

131.   The total for all of the required services that were improperly denied or underpaid by UHC for Wendy H is: **$59,005.17.**

132.   After the benefits were improperly denied or underpaid, Milione (on behalf of Wendy H) went through the entire available appeal process and inexplicably, all appeals were denied and the required payment remains outstanding.

133.   To date, the claim for benefits for Wendy H remains denied and unpaid.

*Vipul P:*

134.   Vipul P was a patient of Milione and UHC denied benefits or significantly underpaid for certain services performed on the following dates:

May 11, 2022, May 16, 2022, May 23, 2022

135.   Vipul P was, at all relevant times, a covered beneficiary under a benefit plan pursuant to which, Vipul P is entitled to health care benefits.

136.   The chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services provided by Milione are

covered services under the UHC plan and accordingly, Milione is entitled to payment for the services provided.

137.   Manipulative Treatment is defined as "a form of care provided by chiropractors for diagnosed muscle, nerve and joint problems."

138.   In fact, under the Plan, if prior authorization is obtained, as it was by Milione prior to the treatment of Vipul P, Milione, as an out of network provider is entitled to a payment of 60% of the Allowed Amount, which are determined under the Plan as either a percentage of the Centers for Medicare and Medicaid services; a gap methodology which may be based off the providers billed charges; or a negotiated rate between the provider and UHC.

139.   Historically, UHC has paid Milione 60-70% of the billed charges for the Manipulative Treatments provided to Vipul P.

140.   When Vipul P became a patient of Milione, he signed an assignment of benefits, which provided that:

> I hereby assign all applicable health insurance benefits to which I and/or my dependents are entitle to Provider [defined as Milione]. . . I hereby authorize Provider to submit claims, on my and/or my dependent's behalf, to the benefit plan (or its administrator) listed on the current insurance card I provided to Provider, in good faith. I also hereby instruct my benefit plan (or its administrator) to pay Provider directly for services rendered to me or my dependents.  To the extent that my current policy prohibits direct payment to Provider, I hereby instruct and direct my benefit plan (or its administrator) to provide documentation stating such non-assignment to myself and Provider upon request. Upon proof of such non-assignment, I instruct my

benefit plan (or its administrator) to make out the check to me and mail it directly to Provider.

141.   In addition, Vipul P signed an authorization allowing Milione to act as Vipul P's "Authorized Representative" in connection with any "claim, right, or cause in action that [she] might have under such insurance policy and/or benefit plan" and the right to "pursue such claim, right or cause of action in connection with said insurance policy and/or benefit plan."

142.   The claims for the denied procedures were delivered to UHC with relevant medical records and other information supporting the claim; however, UHC still refused to pay for these covered benefits, inexplicably claiming on various occasions that the medical records were not received or were not sufficient to support the medical necessity of the procedures.

143.   UHC's denial or underpayment of benefits was not only untimely, but it was also completely improper, arbitrary, and contrary to the benefits plan.

144.   The total for all of the required services that were improperly denied or underpaid by UHC for Vipul P is: **$8,110.53.**

145.   After the benefits were improperly denied or underpaid, Milione (on behalf of Vipul P) went through the entire available appeal process and inexplicably, all appeals were denied and the required payment remains outstanding.

*Xinyu P*

146.   Xinyu P was a patient of Milione and UHC denied benefits or significantly underpaid for certain services performed on the following dates: February 15, 2021, February 19, 2021, February 24, 2021, March 10, 2021, March 15, 2021, March 18, 2021, March 22, 2021, March 25, 2021, March 29, 2021, April 5, 2021, April 8, 2021, April 12, 2021, April 19, 2021, May 21, 2021, May 28, 2021, June 9, 2021, June 25, 2021, October 20, 2021, November 5, 2021, November 10, 2021, November 22, 2021

147.   Xinyu P was, at all relevant times, a covered beneficiary under a benefit plan pursuant to which, Xinyu P is entitled to health care benefits.

148.   The chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services provided by Milione are covered services under the UHC plan and accordingly, Milione is entitled to payment for the services provided.

149.   Manipulative Treatment is defined as "a form of care provided by chiropractors for diagnosed muscle, nerve and joint problems."

150.   In fact, under the Plan, if prior authorization is obtained, as it was by Milione prior to the treatment of Xinyu P, Milione, as an out of network provider is entitled to a payment of 60% of the Allowed Amount, which are determined under the Plan as either a percentage of the Centers for Medicare and Medicaid services;

a gap methodology which may be based off the providers billed charges; or a negotiated rate between the provider and UHC.

151.   Historically, UHC has paid Milione 60-70% of the billed charges for the Manipulative Treatments provided to Xinyu P.

152.   When Xinyu P became a patient of Milione, he signed an assignment of benefits, which provided that:

> I hereby assign all applicable health insurance benefits to which I and/or my dependents are entitle to Provider [defined as Milione]. . . I hereby authorize Provider to submit claims, on my and/or my dependent's behalf, to the benefit plan (or its administrator) listed on the current insurance card I provided to Provider, in good faith. I also hereby instruct my benefit plan (or its administrator) to pay Provider directly for services rendered to me or my dependents.  To the extent that my current policy prohibits direct payment to Provider, I hereby instruct and direct my benefit plan (or its administrator) to provide documentation stating such non-assignment to myself and Provider upon request. Upon proof of such non-assignment, I instruct my benefit plan (or its administrator) to make out the check to me and mail it directly to Provider.

153.   In addition, Xinyu P signed an authorization allowing Milione to act as Xinyu P's "Authorized Representative" in connection with any "claim, right, or cause in action that [she] might have under such insurance policy and/or benefit plan" and the right to "pursue such claim, right or cause of action in connection with said insurance policy and/or benefit plan."

154.   The claims for the denied procedures were delivered to UHC with relevant medical records and other information supporting the claim; however,

UHC still refused to pay for these covered benefits, inexplicably claiming on various occasions that the medical records were not received or were not sufficient to support the medical necessity of the procedures.

155.   UHC's denial or underpayment of benefits was not only untimely, but it was also completely improper, arbitrary, and contrary to the benefits plan.

156.   The total for all of the required services that were improperly denied or underpaid by UHC for Xinyu P is: **$12,652.56.**

157.   After the benefits were improperly denied or underpaid, Milione (on behalf of Xinyu P) went through the entire available appeal process and inexplicably, all appeals were denied and the required payment remains outstanding.

158.   To date, the claim for benefits for Xinyu P remains denied and unpaid,

*Monica A*

159.   Monica A was a patient of Milione and UHC denied benefits or significantly underpaid for certain services performed on the following dates: December 1, 2020, December 2, 2020, December 3, 2020, December 8, 2020, December 10, 2020, December 17, 2020, December 21, 2020, February 22, 2021, February 25, 2021

160.   Monica A was, at all relevant times, a covered beneficiary under a benefit plan pursuant to which, Monica A is entitled to health care benefits.

161.   The chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services provided by Milione are covered services under the UHC plan and accordingly, Milione is entitled to payment for the services provided.

162.   Manipulative Treatment is defined as "a form of care provided by chiropractors for diagnosed muscle, nerve and joint problems."

163.   In fact, under the Plan, if prior authorization is obtained, as it was by Milione prior to the treatment of Monica A, Milione, as an out of network provider is entitled to a payment of 60% of the Allowed Amount, which are determined under the Plan as either a percentage of the Centers for Medicare and Medicaid services; a gap methodology which may be based off the providers billed charges; or a negotiated rate between the provider and UHC.

164.   Historically, UHC has paid Milione 60-70% of the billed charges for the Manipulative Treatments provided to Monica A.

165.   When Monica A became a patient of Milione, she signed an assignment of benefits, which provided that:

> I hereby assign all applicable health insurance benefits to which I and/or my dependents are entitle to Provider [defined as Milione]. . . I hereby authorize Provider to submit claims, on my and/or my dependent's behalf, to the benefit plan (or its administrator) listed on

the current insurance card I provided to Provider, in good faith. I also hereby instruct my benefit plan (or its administrator) to pay Provider directly for services rendered to me or my dependents.  To the extent that my current policy prohibits direct payment to Provider, I hereby instruct and direct my benefit plan (or its administrator) to provide documentation stating such non-assignment to myself and Provider upon request. Upon proof of such non-assignment, I instruct my benefit plan (or its administrator) to make out the check to me and mail it directly to Provider.

166.   In addition, Monica A signed an authorization allowing Milione to act as Monica A's "Authorized Representative" in connection with any "claim, right, or cause in action that [she] might have under such insurance policy and/or benefit plan" and the right to "pursue such claim, right or cause of action in connection with said insurance policy and/or benefit plan."

167.   The claims for the denied procedures were delivered to UHC with relevant medical records and other information supporting the claim; however, UHC still refused to pay for these covered benefits, inexplicably claiming on various occasions that the medical records were not received or were not sufficient to support the medical necessity of the procedures.

168.   UHC's denial or underpayment of benefits was not only untimely, but it was also completely improper, arbitrary, and contrary to the benefits plan.

169.   The total for all of the required services that were improperly denied or underpaid by UHC for Monica A is: **$15,071.05.**

170.   After the benefits were improperly denied or underpaid, Milione (on behalf of Monica A) went through the entire available appeal process and inexplicably, all appeals were denied and the required payment remains outstanding.

171.   To date, the claim for benefits for Monica A remains denied and unpaid.

*Philip K*

172.   Philip K was a patient of Milione and UHC denied benefits or significantly underpaid for certain services performed on the following dates: January 23, 2023, January 25, 2023, February 13, 2023, February 15, 2023, February 8, 2018, February 12, 2018, February 13, 2018, February 15, 2018, February 19, 2018, February 21, 2018, February 27, 2018, March 1, 2018, March 6, 2018, March 8, 2018, March 15, 2018, March 20, 2018, March 22, 2018, March 29, 2018, April 10, 2018, April 16, 2018, June 28, 2018, August 8, 2018, October 15, 2018, October 16, 2018, October 17, 2018, October 18, 2018, October 22, 2018, October 29, 2018, October 28, 2019, October 30, 2019, December 9, 2020

173.   Philip K was, at all relevant times, a covered beneficiary under a benefit plan pursuant to which, Philip K is entitled to health care benefits.

174.   The chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services provided by Milione are

covered services under the UHC plan and accordingly, Milione is entitled to payment for the services provided.

175.   Manipulative Treatment is defined as "a form of care provided by chiropractors for diagnosed muscle, nerve and joint problems."

176.   In fact, under the Plan, if prior authorization is obtained, as it was by Milione prior to the treatment of Philip K, Milione, as an out of network provider is entitled to a payment of 60% of the Allowed Amount, which are determined under the Plan as either a percentage of the Centers for Medicare and Medicaid services; a gap methodology which may be based off the providers billed charges; or a negotiated rate between the provider and UHC.

177.   Historically, UHC has paid Milione 60-70% of the billed charges for the Manipulative Treatments provided to Philip K.

178.   When Philip K became a patient of Milione, he signed an assignment of benefits, which provided that:

> I hereby assign all applicable health insurance benefits to which I and/or my dependents are entitle to Provider [defined as Milione]. . . I hereby authorize Provider to submit claims, on my and/or my dependent's behalf, to the benefit plan (or its administrator) listed on the current insurance card I provided to Provider, in good faith. I also hereby instruct my benefit plan (or its administrator) to pay Provider directly for services rendered to me or my dependents.  To the extent that my current policy prohibits direct payment to Provider, I hereby instruct and direct my benefit plan (or its administrator) to provide documentation stating such non-assignment to myself and Provider upon request. Upon proof of such non-assignment, I instruct my

benefit plan (or its administrator) to make out the check to me and mail it directly to Provider.

179.   In addition, Philip K signed an authorization allowing Milione to act as Philip K's "Authorized Representative" in connection with any "claim, right, or cause in action that [she] might have under such insurance policy and/or benefit plan" and the right to "pursue such claim, right or cause of action in connection with said insurance policy and/or benefit plan."

180.   The claims for the denied procedures were delivered to UHC with relevant medical records and other information supporting the claim; however, UHC still refused to pay for these covered benefits, inexplicably claiming on various occasions that the medical records were not received or were not sufficient to support the medical necessity of the procedures.

181.   UHC's denial or underpayment of benefits was not only untimely, but it was also completely improper, arbitrary, and contrary to the benefits plan.

182.   The total for all of the required services that were improperly denied or underpaid by UHC for Philip K is: **$27,654.95**

183.   After the benefits were improperly denied or underpaid, Milione (on behalf of Philip K) went through the entire available appeal process and inexplicably, all appeals were denied and the required payment remains outstanding.

184.   To date, the claim for benefits for Philip K remains denied and unpaid.

*Simon A*

185.   Simon A was a patient of Milione and UHC denied benefits or significantly underpaid for certain services performed on the following dates: October 7, 2020, October 12, 2020, October 13, 2020, October 14, 2020, October 19, 2020, October 21, 2020, October 26, 2020, October 28, 2020, November 2, 2020, November 4, 2020, November 9, 2020, November 11, 2020, November 16, 2020, November 18, 2020, November 23, 2020, November 25, 2020, November 30, 2020, December 2, 2020, December 9, 2020, December 14, 2020, December 18, 2020, December 21, 2020

186.   Simon A was, at all relevant times, a covered beneficiary under a benefit plan pursuant to which, Simon A is entitled to health care benefits.

187.   The chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services provided by Milione are covered services under the UHC plan and accordingly, Milione is entitled to payment for the services provided.

188.   Manipulative Treatment is defined as "a form of care provided by chiropractors for diagnosed muscle, nerve and joint problems."

189.   In fact, under the Plan, if prior authorization is obtained, as it was by Milione prior to the treatment of Simon A, Milione, as an out of network provider is entitled to a payment of 60% of the Allowed Amount, which are determined under the Plan as either a percentage of the Centers for Medicare and Medicaid services; a gap methodology which may be based off the providers billed charges; or a negotiated rate between the provider and UHC.

190.   Historically, UHC has paid Milione 60-70% of the billed charges for the Manipulative Treatments provided to Simon A.

191.   When Simon A became a patient of Milione, he signed an assignment of benefits, which provided that:

> I hereby assign all applicable health insurance benefits to which I and/or my dependents are entitle to Provider [defined as Milione]. . . I hereby authorize Provider to submit claims, on my and/or my dependent's behalf, to the benefit plan (or its administrator) listed on the current insurance card I provided to Provider, in good faith. I also hereby instruct my benefit plan (or its administrator) to pay Provider directly for services rendered to me or my dependents.  To the extent that my current policy prohibits direct payment to Provider, I hereby instruct and direct my benefit plan (or its administrator) to provide documentation stating such non-assignment to myself and Provider upon request. Upon proof of such non-assignment, I instruct my benefit plan (or its administrator) to make out the check to me and mail it directly to Provider.

192.   In addition, Simon A signed an authorization allowing Milione to act as Simon A's "Authorized Representative" in connection with any "claim, right, or cause in action that [she] might have under such insurance policy and/or benefit

plan" and the right to "pursue such claim, right or cause of action in connection with said insurance policy and/or benefit plan."

193.   The claims for the denied procedures were delivered to UHC with relevant medical records and other information supporting the claim; however, UHC still refused to pay for these covered benefits, inexplicably claiming on various occasions that the medical records were not received or were not sufficient to support the medical necessity of the procedures.

194.   UHC's denial or underpayment of benefits was not only untimely, but it was also completely improper, arbitrary, and contrary to the benefits plan.

195.   The total for all of the required services that were improperly denied or underpaid by UHC for Simon A is: **$7,710.89**

196.   After the benefits were improperly denied or underpaid, Milione (on behalf of Simon A) went through the entire available appeal process and inexplicably, all appeals were denied and the required payment remains outstanding.

197.  To date, the claim for benefits for Simon A remains denied and unpaid.

*Tyler K*

198.   Tyler K was a patient of Milione and UHC denied benefits or significantly underpaid for certain services performed on the following dates: February 17, 2020

199.   Tyler K was, at all relevant times, a covered beneficiary under a benefit plan pursuant to which, Tyler K is entitled to health care benefits.

200.   The chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services provided by Milione are covered services under the UHC plan and accordingly, Milione is entitled to payment for the services provided.

201.   Manipulative Treatment is defined as "a form of care provided by chiropractors for diagnosed muscle, nerve and joint problems."

202.   In fact, under the Plan, if prior authorization is obtained, as it was by Milione prior to the treatment of Tyler K, Milione, as an out of network provider is entitled to a payment of 60% of the Allowed Amount, which are determined under the Plan as either a percentage of the Centers for Medicare and Medicaid services; a gap methodology which may be based off the providers billed charges; or a negotiated rate between the provider and UHC.

203.   Historically, UHC has paid Milione 60-70% of the billed charges for the Manipulative Treatments provided to Tyler K.

204.   When Tyler K became a patient of Milione, he signed an assignment of benefits, which provided that:

> I hereby assign all applicable health insurance benefits to which I and/or my dependents are entitle to Provider [defined as Milione]. . . I hereby authorize Provider to submit claims, on my and/or my dependent's behalf, to the benefit plan (or its administrator) listed on the current insurance card I provided to Provider, in good faith. I also hereby instruct my benefit plan (or its administrator) to pay Provider directly for services rendered to me or my dependents.  To the extent that my current policy prohibits direct payment to Provider, I hereby instruct and direct my benefit plan (or its administrator) to provide documentation stating such non-assignment to myself and Provider upon request. Upon proof of such non-assignment, I instruct my benefit plan (or its administrator) to make out the check to me and mail it directly to Provider.

205.   In addition, Tyler K signed an authorization allowing Milione to act as Tyler K's "Authorized Representative" in connection with any "claim, right, or cause in action that [she] might have under such insurance policy and/or benefit plan" and the right to "pursue such claim, right or cause of action in connection with said insurance policy and/or benefit plan."

206.   The claims for the denied procedures were delivered to UHC with relevant medical records and other information supporting the claim; however, UHC still refused to pay for these covered benefits, inexplicably claiming on various occasions that the medical records were not received or were not sufficient to support the medical necessity of the procedures.

207.   UHC's denial or underpayment of benefits was not only untimely, but it was also completely improper, arbitrary, and contrary to the benefits plan.

208.   The total for all of the required services that were improperly denied or underpaid by UHC for Tyler K is: **$3,872.67**

209.   After the benefits were improperly denied or underpaid, Milione (on behalf of Tyler K) went through the entire available appeal process and inexplicably, all appeals were denied and the required payment remains outstanding.

210.   To date, the claim for benefits for Tyler K remains denied and unpaid.

*Raymond VN*

211.   Raymond VN was a patient of Milione and UHC denied benefits or significantly underpaid for certain services performed on the following dates:

March 9, 2020, March 12, 2020, March 16, 2020, March 18, 2020, July    7, 2020, July 9, 2020, July 13, 2020, July 15, 2020, July 20, 2020, July 22, 2020, July 27, 2020, July 29, 2020, August 3, 2020, August 5, 2020, August 10, 2020, August 12, 2020, August 17, 2020, August 19, 2020, August 24,  2020, August 26, 2020, August 31, 2020, September 2, 2020, September 8, 2020, September 10, 2020, September 14, 2020, September 16, 2020, September 21, 2020, September 23, 2020, September 29, 2020, September 30, 2020, October 5, 2020, October 7, 2020, October 12, 2020, October 14, 2020, October 19, 2020, October 21, 2020, October

26, 2020, October 28, 2020, November 2, 2020, November 4, 2020, November 9, 2020, November 11, 2020, November 18, 2020, November 20, 2020, November 23, 2020, November 25, 2020, November 30, 2020, December 2, 2020, December 7, 2020, December 9, 2020, December 14, 2020, December 16, 2020, December 21, 2020, December 22, 2020, January 25, 2021, January 29, 2021, February 8, 2021, February 12, 2021, February 15, 2021, February 19, 2021, February 22, 2021, February 25, 2021, March 1, 2021, March 4, 2021, March 18, 2021, March 22, 2021, March 25, 2021, March 29, 2021, April 5, 2021, April 8, 2021, April 12, 2021, April 15, 2021, April 19, 2021, May 21,2021, May 28, 2021,June 7, 2021, June 9, 2021, June 25, 2021, July 21, 2021, July 23,  2021, August 6, 2021, August 18, 2021,  September 1, 2021, September 16, 2020, October 27, 2021

212.   Raymond VN was, at all relevant times, a covered beneficiary under a benefit plan pursuant to which, Raymond VN is entitled to health care benefits.

213.   The chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services provided by Milione are covered services under the UHC plan and accordingly, Milione is entitled to payment for the services provided.

214.   Manipulative Treatment is defined as "a form of care provided by chiropractors for diagnosed muscle, nerve and joint problems."

215.   In fact, under the Plan, if prior authorization is obtained, as it was by Milione prior to the treatment of Raymond VN, Milione, as an out of network provider is entitled to a payment of 60% of the Allowed Amount, which are determined under the Plan as either a percentage of the Centers for Medicare and Medicaid services; a gap methodology which may be based off the providers billed charges; or a negotiated rate between the provider and UHC.

216.   Historically, UHC has paid Milione 60-70% of the billed charges for the Manipulative Treatments provided to Raymond VN.

217.   When Raymond VN became a patient of Milione, he signed an assignment of benefits, which provided that:

> I hereby assign all applicable health insurance benefits to which I and/or my dependents are entitle to Provider [defined as Milione]. . . I hereby authorize Provider to submit claims, on my and/or my dependent's behalf, to the benefit plan (or its administrator) listed on the current insurance card I provided to Provider, in good faith. I also hereby instruct my benefit plan (or its administrator) to pay Provider directly for services rendered to me or my dependents.  To the extent that my current policy prohibits direct payment to Provider, I hereby instruct and direct my benefit plan (or its administrator) to provide documentation stating such non-assignment to myself and Provider upon request. Upon proof of such non-assignment, I instruct my benefit plan (or its administrator) to make out the check to me and mail it directly to Provider.

218.   In addition, Raymond VN signed an authorization allowing Milione to act as Raymond VN's "Authorized Representative" in connection with any "claim, right, or cause in action that [she] might have under such insurance policy and/or

benefit plan" and the right to "pursue such claim, right or cause of action in connection with said insurance policy and/or benefit plan."

219.  The claims for the denied procedures were delivered to UHC with relevant medical records and other information supporting the claim; however, UHC still refused to pay for these covered benefits, inexplicably claiming on various occasions that the medical records were not received or were not sufficient to support the medical necessity of the procedures.

220.  UHC's denial or underpayment of benefits was not only untimely, but it was also completely improper, arbitrary, and contrary to the benefits plan.

221.  The total for all of the required services that were improperly denied or underpaid by UHC for Raymond VN is: **$69,105.33**

222.  After the benefits were improperly denied or underpaid, Milione (on behalf of Raymond VN) went through the entire available appeal process and inexplicably, all appeals were denied and the required payment remains outstanding.

223.  To date, the claim for benefits for Raymond VN remains denied and unpaid.

*Cassandra C*

224.  Cassandra C was a patient of Milione and UHC denied benefits or significantly underpaid for certain services performed on the following dates:

March 13, 2023, March 20, 2023, March 22, 2023, March 27, 2023, March 29, 2023, April 5, 2023, April 10, 2023, April 17, 2023, April 19, 2023, April 24, 2023, April 26, 2023

225.   Cassandra C was, at all relevant times, a covered beneficiary under a benefit plan pursuant to which, Cassandra C is entitled to health care benefits.

226.   The chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services provided by Milione are covered services under the UHC plan and accordingly, Milione is entitled to payment for the services provided.

227.   Manipulative Treatment is defined as "a form of care provided by chiropractors for diagnosed muscle, nerve and joint problems."

228.   In fact, under the Plan, if prior authorization is obtained, as it was by Milione prior to the treatment of Cassandra C, Milione, as an out of network provider is entitled to a payment of 60% of the Allowed Amount, which are determined under the Plan as either a percentage of the Centers for Medicare and Medicaid services; a gap methodology which may be based off the providers billed charges; or a negotiated rate between the provider and UHC.

229.   Historically, UHC has paid Milione 60-70% of the billed charges for the Manipulative Treatments provided to Cassandra C.

230.   When Cassandra C became a patient of Milione, he signed an assignment of benefits, which provided that:

> I hereby assign all applicable health insurance benefits to which I and/or my dependents are entitle to Provider [defined as Milione]. . . I hereby authorize Provider to submit claims, on my and/or my dependent's behalf, to the benefit plan (or its administrator) listed on the current insurance card I provided to Provider, in good faith. I also hereby instruct my benefit plan (or its administrator) to pay Provider directly for services rendered to me or my dependents.  To the extent that my current policy prohibits direct payment to Provider, I hereby instruct and direct my benefit plan (or its administrator) to provide documentation stating such non-assignment to myself and Provider upon request. Upon proof of such non-assignment, I instruct my benefit plan (or its administrator) to make out the check to me and mail it directly to Provider.

231.   In addition, Cassandra C signed an authorization allowing Milione to act as Cassandra C's "Authorized Representative" in connection with any "claim, right, or cause in action that [she] might have under such insurance policy and/or benefit plan" and the right to "pursue such claim, right or cause of action in connection with said insurance policy and/or benefit plan."

232.   The claims for the denied procedures were delivered to UHC with relevant medical records and other information supporting the claim; however, UHC still refused to pay for these covered benefits, inexplicably claiming on various occasions that the medical records were not received or were not sufficient to support the medical necessity of the procedures.

233.   UHC's denial or underpayment of benefits was not only untimely, but it was also completely improper, arbitrary, and contrary to the benefits plan.

234.   The total for all of the required services that were improperly denied or underpaid by UHC for Cassandra C is: **$12,535.13**

235.   After the benefits were improperly denied or underpaid, Milione (on behalf of Cassandra C) went through the entire available appeal process and inexplicably, all appeals were denied and the required payment remains outstanding.

236.   To date, the claim for benefits for Cassandra C remains denied and unpaid.

*Elizabeth L*

237.   Elizabeth L was a patient of Milione and UHC denied benefits or significantly underpaid for certain services performed on the following dates:

April 27, 2022, April 29, 2022, May 2, 2022, May 9, 2022, May 16, 2022, May 23, 2022, May 31, 2022, June 16, 2022, June 27, 2022, July 5, 2022, July 11, 2022, July 18, 2022, July 25, 2022, August 10, 2022, August 15, 2022, August 29, 2022, September 6, 2022, September 26, 2022, October 10, 2022, October 24, 2022, October 31, 2022, November 14, 2022, November 28, 2022, December 5, 2022, December 12, 2022, December 19, 2022, January 23, 2023, February 6, 2023,

February 21, 2023, March 6, 2023, March 20, 2023, April 10, 2023, April 24, 2023, May 8, 2023, May 22, 2023

238.   Elizabeth L was, at all relevant times, a covered beneficiary under a benefit plan pursuant to which, Elizabeth L is entitled to health care benefits.

239.   The chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services provided by Milione are covered services under the UHC plan and accordingly, Milione is entitled to payment for the services provided.

240.   Manipulative Treatment is defined as "a form of care provided by chiropractors for diagnosed muscle, nerve and joint problems."

241.   In fact, under the Plan, if prior authorization is obtained, as it was by Milione prior to the treatment of Elizabeth L, Milione, as an out of network provider is entitled to a payment of 60% of the Allowed Amount, which are determined under the Plan as either a percentage of the Centers for Medicare and Medicaid services; a gap methodology which may be based off the providers billed charges; or a negotiated rate between the provider and UHC.

242.   Historically, UHC has paid Milione 60-70% of the billed charges for the Manipulative Treatments provided to Elizabeth L.

243.   When Elizabeth L became a patient of Milione, he signed an assignment of benefits, which provided that:

I hereby assign all applicable health insurance benefits to which I and/or my dependents are entitle to Provider [defined as Milione]. . . I hereby authorize Provider to submit claims, on my and/or my dependent's behalf, to the benefit plan (or its administrator) listed on the current insurance card I provided to Provider, in good faith. I also hereby instruct my benefit plan (or its administrator) to pay Provider directly for services rendered to me or my dependents.  To the extent that my current policy prohibits direct payment to Provider, I hereby instruct and direct my benefit plan (or its administrator) to provide documentation stating such non-assignment to myself and Provider upon request. Upon proof of such non-assignment, I instruct my benefit plan (or its administrator) to make out the check to me and mail it directly to Provider.

244.   In addition, Elizabeth L signed an authorization allowing Milione to act as Elizabeth L's "Authorized Representative" in connection with any "claim, right, or cause in action that [she] might have under such insurance policy and/or benefit plan" and the right to "pursue such claim, right or cause of action in connection with said insurance policy and/or benefit plan."

245.   The claims for the denied procedures were delivered to UHC with relevant medical records and other information supporting the claim; however, UHC still refused to pay for these covered benefits, inexplicably claiming on various occasions that the medical records were not received or were not sufficient to support the medical necessity of the procedures.

246.   UHC's denial or underpayment of benefits was not only untimely, but it was also completely improper, arbitrary, and contrary to the benefits plan.

247.   The total for all of the required services that were improperly denied or underpaid by UHC for Elizabeth L is: **$52,366.63.**

248.   After the benefits were improperly denied or underpaid, Milione (on behalf of Elizabeth L) went through the entire available appeal process and inexplicably, all appeals were denied and the required payment remains outstanding.

249.   To date, the claim for benefits for Elizabeth L remains denied and unpaid

*Dieter L*

250.   Dieter L was a patient of Milione and UHC denied benefits or significantly underpaid for certain services performed on the following dates:

April 13, 2021, April 15, 2021, April 16, 2021, May 21, 2021

251.   Dieter L was, at all relevant times, a covered beneficiary under a benefit plan pursuant to which, Dieter L is entitled to health care benefits.

252.   The chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services provided by Milione are covered services under the UHC plan and accordingly, Milione is entitled to payment for the services provided.

253.   Manipulative Treatment is defined as "a form of care provided by chiropractors for diagnosed muscle, nerve and joint problems."

254.   In fact, under the Plan, if prior authorization is obtained, as it was by Milione prior to the treatment of Dieter L, Milione, as an out of network provider is entitled to a payment of 60% of the Allowed Amount, which are determined under the Plan as either a percentage of the Centers for Medicare and Medicaid services; a gap methodology which may be based off the providers billed charges; or a negotiated rate between the provider and UHC.

255.   Historically, UHC has paid Milione 60-70% of the billed charges for the Manipulative Treatments provided to Dieter L.

256.   When Dieter L became a patient of Milione, he signed an assignment of benefits, which provided that:

> I hereby assign all applicable health insurance benefits to which I and/or my dependents are entitle to Provider [defined as Milione]. . . I hereby authorize Provider to submit claims, on my and/or my dependent's behalf, to the benefit plan (or its administrator) listed on the current insurance card I provided to Provider, in good faith. I also hereby instruct my benefit plan (or its administrator) to pay Provider directly for services rendered to me or my dependents.  To the extent that my current policy prohibits direct payment to Provider, I hereby instruct and direct my benefit plan (or its administrator) to provide documentation stating such non-assignment to myself and Provider upon request. Upon proof of such non-assignment, I instruct my benefit plan (or its administrator) to make out the check to me and mail it directly to Provider.

257.   In addition, Dieter L signed an authorization allowing Milione to act as Dieter L's "Authorized Representative" in connection with any "claim, right, or cause in action that [she] might have under such insurance policy and/or benefit

plan" and the right to "pursue such claim, right or cause of action in connection with said insurance policy and/or benefit plan."

258.   The claims for the denied procedures were delivered to UHC with relevant medical records and other information supporting the claim; however, UHC still refused to pay for these covered benefits, inexplicably claiming on various occasions that the medical records were not received or were not sufficient to support the medical necessity of the procedures.

259.   UHC's denial or underpayment of benefits was not only untimely, but it was also completely improper, arbitrary, and contrary to the benefits plan.

260.   The total for all of the required services that were improperly denied or underpaid by UHC for Dieter L is: **$6,575.95.**

261.   After the benefits were improperly denied or underpaid, Milione (on behalf of Dieter L) went through the entire available appeal process and inexplicably, all appeals were denied and the required payment remains outstanding.

262.   To date, the claim for benefits for Dieter L remains denied and unpaid

*Evan H*

263.   Evan H was a patient of Milione and UHC denied benefits or significantly underpaid for certain services performed on the following dates:

January 4, 2023, January 9, 2023, January 11, 2023, January 23, 2023, January 30, 2023, February 6, 2023, February 8, 2023, March 6, 2023, March 20, 2023, April 10, 2023

264.   Evan H was, at all relevant times, a covered beneficiary under a benefit plan pursuant to which, Evan H is entitled to health care benefits.

265.   The chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services provided by Milione are covered services under the UHC plan and accordingly, Milione is entitled to payment for the services provided.

266.   Manipulative Treatment is defined as "a form of care provided by chiropractors for diagnosed muscle, nerve and joint problems."

267.   In fact, under the Plan, if prior authorization is obtained, as it was by Milione prior to the treatment of Evan H, Milione, as an out of network provider is entitled to a payment of 60% of the Allowed Amount, which are determined under the Plan as either a percentage of the Centers for Medicare and Medicaid services; a gap methodology which may be based off the providers billed charges; or a negotiated rate between the provider and UHC.

268.   Historically, UHC has paid Milione 60-70% of the billed charges for the Manipulative Treatments provided to Evan H.

269.   When Evan H became a patient of Milione, he signed an assignment of benefits, which provided that:

> I hereby assign all applicable health insurance benefits to which I and/or my dependents are entitle to Provider [defined as Milione]. . . I hereby authorize Provider to submit claims, on my and/or my dependent's behalf, to the benefit plan (or its administrator) listed on the current insurance card I provided to Provider, in good faith. I also hereby instruct my benefit plan (or its administrator) to pay Provider directly for services rendered to me or my dependents.  To the extent that my current policy prohibits direct payment to Provider, I hereby instruct and direct my benefit plan (or its administrator) to provide documentation stating such non-assignment to myself and Provider upon request. Upon proof of such non-assignment, I instruct my benefit plan (or its administrator) to make out the check to me and mail it directly to Provider.

270.   In addition, Evan H signed an authorization allowing Milione to act as Evan H's "Authorized Representative" in connection with any "claim, right, or cause in action that [she] might have under such insurance policy and/or benefit plan" and the right to "pursue such claim, right or cause of action in connection with said insurance policy and/or benefit plan."

271.   The claims for the denied procedures were delivered to UHC with relevant medical records and other information supporting the claim; however, UHC still refused to pay for these covered benefits, inexplicably claiming on various occasions that the medical records were not received or were not sufficient to support the medical necessity of the procedures.

272.   UHC's denial or underpayment of benefits was not only untimely, but it was also completely improper, arbitrary, and contrary to the benefits plan.

273.   The total for all of the required services that were improperly denied or underpaid by UHC for Evan H is: **$23,919.43.**

274.   After the benefits were improperly denied or underpaid, Milione (on behalf of Evan H) went through the entire available appeal process and inexplicably, all appeals were denied and the required payment remains outstanding.

275.   To date, the claim for benefits for Evan H remains denied and unpaid

*Evelyse F*

276.   Evelyse F was a patient of Milione and UHC denied benefits or significantly underpaid for certain services performed on the following dates: December 15, 2020, December 21, 2020, December 22, 2020, December 30, 2020

277.   Evelyse F was, at all relevant times, a covered beneficiary under a benefit plan pursuant to which, Evelyse F is entitled to health care benefits.

278.   The chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services provided by Milione are covered services under the UHC plan and accordingly, Milione is entitled to payment for the services provided.

279.   Manipulative Treatment is defined as "a form of care provided by chiropractors for diagnosed muscle, nerve and joint problems."

280.   In fact, under the Plan, if prior authorization is obtained, as it was by Milione prior to the treatment of Evelyse F, Milione, as an out of network provider is entitled to a payment of 60% of the Allowed Amount, which are determined under the Plan as either a percentage of the Centers for Medicare and Medicaid services; a gap methodology which may be based off the providers billed charges; or a negotiated rate between the provider and UHC.

281.   Historically, UHC has paid Milione 60-70% of the billed charges for the Manipulative Treatments provided to Evelyse F.

282.   When Evelyse F became a patient of Milione, he signed an assignment of benefits, which provided that:

> I hereby assign all applicable health insurance benefits to which I and/or my dependents are entitle to Provider [defined as Milione]. . . I hereby authorize Provider to submit claims, on my and/or my dependent's behalf, to the benefit plan (or its administrator) listed on the current insurance card I provided to Provider, in good faith. I also hereby instruct my benefit plan (or its administrator) to pay Provider directly for services rendered to me or my dependents.  To the extent that my current policy prohibits direct payment to Provider, I hereby instruct and direct my benefit plan (or its administrator) to provide documentation stating such non-assignment to myself and Provider upon request. Upon proof of such non-assignment, I instruct my benefit plan (or its administrator) to make out the check to me and mail it directly to Provider.

283.   In addition, Evelyse F signed an authorization allowing Milione to act as Evelyse F's "Authorized Representative" in connection with any "claim, right, or cause in action that [she] might have under such insurance policy and/or benefit plan" and the right to "pursue such claim, right or cause of action in connection with said insurance policy and/or benefit plan."

284.   The claims for the denied procedures were delivered to UHC with relevant medical records and other information supporting the claim; however, UHC still refused to pay for these covered benefits, inexplicably claiming on various occasions that the medical records were not received or were not sufficient to support the medical necessity of the procedures.

285.   UHC's denial or underpayment of benefits was not only untimely, but it was also completely improper, arbitrary, and contrary to the benefits plan.

286.   The total for all of the required services that were improperly denied or underpaid by UHC for Evelyse F is: **$5,199.87.**

287.   After the benefits were improperly denied or underpaid, Milione (on behalf of Evelyse F) went through the entire available appeal process and inexplicably, all appeals were denied and the required payment remains outstanding.

288.   To date, the claim for benefits for Evelyse F remains denied and unpaid

*Hye KY*

289.   Hye KY was a patient of Milione and UHC denied benefits or significantly underpaid for certain services performed on the following dates: February 16, 2022

290.   Hye KY was, at all relevant times, a covered beneficiary under a benefit plan pursuant to which, Hye KY is entitled to health care benefits.

291.   The chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services provided by Milione are covered services under the UHC plan and accordingly, Milione is entitled to payment for the services provided.

292.   Manipulative Treatment is defined as "a form of care provided by chiropractors for diagnosed muscle, nerve and joint problems."

293.   In fact, under the Plan, if prior authorization is obtained, as it was by Milione prior to the treatment of Hye KY, Milione, as an out of network provider is entitled to a payment of 60% of the Allowed Amount, which are determined under the Plan as either a percentage of the Centers for Medicare and Medicaid services; a gap methodology which may be based off the providers billed charges; or a negotiated rate between the provider and UHC.

294.   Historically, UHC has paid Milione 60-70% of the billed charges for the Manipulative Treatments provided to Hye KY.

295.   When Hye KY became a patient of Milione, he signed an assignment of benefits, which provided that:

> I hereby assign all applicable health insurance benefits to which I and/or my dependents are entitle to Provider [defined as Milione]. . . I hereby authorize Provider to submit claims, on my and/or my dependent's behalf, to the benefit plan (or its administrator) listed on the current insurance card I provided to Provider, in good faith. I also hereby instruct my benefit plan (or its administrator) to pay Provider directly for services rendered to me or my dependents.  To the extent that my current policy prohibits direct payment to Provider, I hereby instruct and direct my benefit plan (or its administrator) to provide documentation stating such non-assignment to myself and Provider upon request. Upon proof of such non-assignment, I instruct my benefit plan (or its administrator) to make out the check to me and mail it directly to Provider.

296.   In addition, Hye KY signed an authorization allowing Milione to act as Hye KY's "Authorized Representative" in connection with any "claim, right, or cause in action that [she] might have under such insurance policy and/or benefit plan" and the right to "pursue such claim, right or cause of action in connection with said insurance policy and/or benefit plan."

297.   The claims for the denied procedures were delivered to UHC with relevant medical records and other information supporting the claim; however, UHC still refused to pay for these covered benefits, inexplicably claiming on various occasions that the medical records were not received or were not sufficient to support the medical necessity of the procedures.

298.   UHC's denial or underpayment of benefits was not only untimely, but it was also completely improper, arbitrary, and contrary to the benefits plan.

299.   The total for all of the required services that were improperly denied or underpaid by UHC for Hye KY is: **$4,052.67.**

300.   After the benefits were improperly denied or underpaid, Milione (on behalf of Hye KY) went through the entire available appeal process and inexplicably, all appeals were denied and the required payment remains outstanding.

301.   To date, the claim for benefits for Hye KY remains denied and unpaid

*Mark L*

302.   Mark L was a patient of Milione and UHC denied benefits or significantly underpaid for certain services performed on the following dates: February 24, 2020, March 2, 2020, March 9, 2020, March 12, 2020

303.   Mark L was, at all relevant times, a covered beneficiary under a benefit plan pursuant to which, Mark L is entitled to health care benefits.

304.   The chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services provided by Milione are covered services under the UHC plan and accordingly, Milione is entitled to payment for the services provided.

305.   Manipulative Treatment is defined as "a form of care provided by chiropractors for diagnosed muscle, nerve and joint problems."

306.   In fact, under the Plan, if prior authorization is obtained, as it was by Milione prior to the treatment of Mark L, Milione, as an out of network provider is entitled to a payment of 60% of the Allowed Amount, which are determined under the Plan as either a percentage of the Centers for Medicare and Medicaid services; a gap methodology which may be based off the providers billed charges; or a negotiated rate between the provider and UHC.

307.   Historically, UHC has paid Milione 60-70% of the billed charges for the Manipulative Treatments provided to Mark L.

308.   When Mark L became a patient of Milione, he signed an assignment of benefits, which provided that:

> I hereby assign all applicable health insurance benefits to which I and/or my dependents are entitle to Provider [defined as Milione]. . . I hereby authorize Provider to submit claims, on my and/or my dependent's behalf, to the benefit plan (or its administrator) listed on the current insurance card I provided to Provider, in good faith. I also hereby instruct my benefit plan (or its administrator) to pay Provider directly for services rendered to me or my dependents.  To the extent that my current policy prohibits direct payment to Provider, I hereby instruct and direct my benefit plan (or its administrator) to provide documentation stating such non-assignment to myself and Provider upon request. Upon proof of such non-assignment, I instruct my benefit plan (or its administrator) to make out the check to me and mail it directly to Provider.

309.   In addition, Mark L signed an authorization allowing Milione to act as Mark L's "Authorized Representative" in connection with any "claim, right, or cause in action that [she] might have under such insurance policy and/or benefit plan" and the right to "pursue such claim, right or cause of action in connection with said insurance policy and/or benefit plan."

310.   The claims for the denied procedures were delivered to UHC with relevant medical records and other information supporting the claim; however, UHC still refused to pay for these covered benefits, inexplicably claiming on various occasions that the medical records were not received or were not sufficient to support the medical necessity of the procedures.

311.   UHC's denial or underpayment of benefits was not only untimely, but it was also completely improper, arbitrary, and contrary to the benefits plan.

312.   The total for all of the required services that were improperly denied or underpaid by UHC for Mark L is: **$5,134.56.**

313.   After the benefits were improperly denied or underpaid, Milione (on behalf of Mark L) went through the entire available appeal process and inexplicably, all appeals were denied and the required payment remains outstanding.

314.   To date, the claim for benefits for Mark L remains denied and unpaid.

*Onur I*

315.   Onur I was a patient of Milione and UHC denied benefits or significantly underpaid for certain services performed on the following dates:

April 10, 2023, April 11, 2023, April 12, 2023, April 13, 2023, April 17, 2023, April 27, 2023

316.   Onur I was, at all relevant times, a covered beneficiary under a benefit plan pursuant to which, Onur I is entitled to health care benefits.

317.   The chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services provided by Milione are covered services under the UHC plan and accordingly, Milione is entitled to payment for the services provided.

318.   Manipulative Treatment is defined as "a form of care provided by chiropractors for diagnosed muscle, nerve and joint problems."

319.   In fact, under the Plan, if prior authorization is obtained, as it was by Milione prior to the treatment of Onur I, Milione, as an out of network provider is entitled to a payment of 60% of the Allowed Amount, which are determined under the Plan as either a percentage of the Centers for Medicare and Medicaid services; a gap methodology which may be based off the providers billed charges; or a negotiated rate between the provider and UHC.

320.   Historically, UHC has paid Milione 60-70% of the billed charges for the Manipulative Treatments provided to Onur I.

321.   When Onur I became a patient of Milione, he signed an assignment of benefits, which provided that:

> I hereby assign all applicable health insurance benefits to which I and/or my dependents are entitle to Provider [defined as Milione]. . . I hereby authorize Provider to submit claims, on my and/or my dependent's behalf, to the benefit plan (or its administrator) listed on the current insurance card I provided to Provider, in good faith. I also hereby instruct my benefit plan (or its administrator) to pay Provider directly for services rendered to me or my dependents.  To the extent that my current policy prohibits direct payment to Provider, I hereby instruct and direct my benefit plan (or its administrator) to provide documentation stating such non-assignment to myself and Provider upon request. Upon proof of such non-assignment, I instruct my benefit plan (or its administrator) to make out the check to me and mail it directly to Provider.

322.   In addition, Onur I signed an authorization allowing Milione to act as Onur I's "Authorized Representative" in connection with any "claim, right, or cause in action that [she] might have under such insurance policy and/or benefit plan" and the right to "pursue such claim, right or cause of action in connection with said insurance policy and/or benefit plan."

323.   The claims for the denied procedures were delivered to UHC with relevant medical records and other information supporting the claim; however, UHC still refused to pay for these covered benefits, inexplicably claiming on

various occasions that the medical records were not received or were not sufficient to support the medical necessity of the procedures.

324.   UHC's denial or underpayment of benefits was not only untimely, but it was also completely improper, arbitrary, and contrary to the benefits plan.

325.   The total for all of the required services that were improperly denied or underpaid by UHC for Onur I is: **$9,649.38.**

326.   After the benefits were improperly denied or underpaid, Milione (on behalf of Onur I) went through the entire available appeal process and inexplicably, all appeals were denied and the required payment remains outstanding.

327.   To date, the claim for benefits for Onur I remains denied and unpaid

*Barbara N*

328.   Barbara N was a patient of Milione and UHC denied benefits or significantly underpaid for certain services performed on the following dates: January 25, 2023, January 30, 2023, February 1, 2023, March 6, 2023

329.   Barbara N was, at all relevant times, a covered beneficiary under a benefit plan pursuant to which, Barbara N is entitled to health care benefits.

330.   The chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services provided by Milione are

covered services under the UHC plan and accordingly, Milione is entitled to payment for the services provided.

331.   Manipulative Treatment is defined as "a form of care provided by chiropractors for diagnosed muscle, nerve and joint problems."

332.   In fact, under the Plan, if prior authorization is obtained, as it was by Milione prior to the treatment of Barbara N, Milione, as an out of network provider is entitled to a payment of 60% of the Allowed Amount, which are determined under the Plan as either a percentage of the Centers for Medicare and Medicaid services; a gap methodology which may be based off the providers billed charges; or a negotiated rate between the provider and UHC.

333.   Historically, UHC has paid Milione 60-70% of the billed charges for the Manipulative Treatments provided to Barbara N.

334.  When Barbara N became a patient of Milione, he signed an assignment of benefits, which provided that:

> I hereby assign all applicable health insurance benefits to which I and/or my dependents are entitle to Provider [defined as Milione]. . . I hereby authorize Provider to submit claims, on my and/or my dependent's behalf, to the benefit plan (or its administrator) listed on the current insurance card I provided to Provider, in good faith. I also hereby instruct my benefit plan (or its administrator) to pay Provider directly for services rendered to me or my dependents.  To the extent that my current policy prohibits direct payment to Provider, I hereby instruct and direct my benefit plan (or its administrator) to provide documentation stating such non-assignment to myself and Provider upon request. Upon proof of such non-assignment, I instruct my

benefit plan (or its administrator) to make out the check to me and mail it directly to Provider.

335.   In addition, Barbara N signed an authorization allowing Milione to act as Barbara N's "Authorized Representative" in connection with any "claim, right, or cause in action that [she] might have under such insurance policy and/or benefit plan" and the right to "pursue such claim, right or cause of action in connection with said insurance policy and/or benefit plan."

336.   The claims for the denied procedures were delivered to UHC with relevant medical records and other information supporting the claim; however, UHC still refused to pay for these covered benefits, inexplicably claiming on various occasions that the medical records were not received or were not sufficient to support the medical necessity of the procedures.

337.   UHC's denial or underpayment of benefits was not only untimely, but it was also completely improper, arbitrary, and contrary to the benefits plan.

338.   The total for all of the required services that were improperly denied or underpaid by UHC for Barbara N is: **$11,320.15.**

339.   After the benefits were improperly denied or underpaid, Milione (on behalf of Barbara N) went through the entire available appeal process and inexplicably, all appeals were denied and the required payment remains outstanding.

340.   To date, the claim for benefits for Barbara N remains denied and unpaid

*Jin F*

341.   Jin F was a patient of Milione and UHC denied benefits or significantly underpaid for certain services performed on the following dates:

July 20, 2022, July 25, 2022, July 27, 2022, August 8, 2022, August 10, 2022, August 15, 2022, August 17, 2022, August 22, 2022, August 24, 2022, August 29, 2022, August 31, 2022, September 7, 2022, September 12, 2022, September 14, 2022, September 19, 2022, September 26, 2022, October 3, 2022, October 12, 2022, October 19, 2022, October 31, 2022, November 7, 2022, November 14, 2022

342.   Jin F was, at all relevant times, a covered beneficiary under a benefit plan pursuant to which, Jin F is entitled to health care benefits.

343.   The chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services provided by Milione are covered services under the UHC plan and accordingly, Milione is entitled to payment for the services provided.

344.   Manipulative Treatment is defined as "a form of care provided by chiropractors for diagnosed muscle, nerve and joint problems."

345.   In fact, under the Plan, if prior authorization is obtained, as it was by Milione prior to the treatment of Jin F, Milione, as an out of network provider is

entitled to a payment of 60% of the Allowed Amount, which are determined under the Plan as either a percentage of the Centers for Medicare and Medicaid services; a gap methodology which may be based off the providers billed charges; or a negotiated rate between the provider and UHC.

346.   Historically, UHC has paid Milione 60-70% of the billed charges for the Manipulative Treatments provided to Jin F.

347.   When Jin F became a patient of Milione, he signed an assignment of benefits, which provided that:

> I hereby assign all applicable health insurance benefits to which I and/or my dependents are entitle to Provider [defined as Milione]. . . I hereby authorize Provider to submit claims, on my and/or my dependent's behalf, to the benefit plan (or its administrator) listed on the current insurance card I provided to Provider, in good faith. I also hereby instruct my benefit plan (or its administrator) to pay Provider directly for services rendered to me or my dependents.  To the extent that my current policy prohibits direct payment to Provider, I hereby instruct and direct my benefit plan (or its administrator) to provide documentation stating such non-assignment to myself and Provider upon request. Upon proof of such non-assignment, I instruct my benefit plan (or its administrator) to make out the check to me and mail it directly to Provider.

348.   In addition, Jin F signed an authorization allowing Milione to act as Jin F's "Authorized Representative" in connection with any "claim, right, or cause in action that [she] might have under such insurance policy and/or benefit plan" and the right to "pursue such claim, right or cause of action in connection with said insurance policy and/or benefit plan."

349.   The claims for the denied procedures were delivered to UHC with relevant medical records and other information supporting the claim; however, UHC still refused to pay for these covered benefits, inexplicably claiming on various occasions that the medical records were not received or were not sufficient to support the medical necessity of the procedures.

350.   UHC's denial or underpayment of benefits was not only untimely, but it was also completely improper, arbitrary, and contrary to the benefits plan.

351.   The total for all of the required services that were improperly denied or underpaid by UHC for Jin F is: **$12,499.64.**

352.   After the benefits were improperly denied or underpaid, Milione (on behalf of Jin F) went through the entire available appeal process and inexplicably, all appeals were denied and the required payment remains outstanding.

353.   To date, the claim for benefits for Jin F remains denied and unpaid

*Michael G*

354.   Michael G was a patient of Milione and UHC denied benefits or significantly underpaid for certain services performed on the following dates:

June 16, 2022, July 13, 2022

355.   Michael G was, at all relevant times, a covered beneficiary under a benefit plan pursuant to which, Michael G is entitled to health care benefits.

356.   The chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services provided by Milione are covered services under the UHC plan and accordingly, Milione is entitled to payment for the services provided.

357.   Manipulative Treatment is defined as "a form of care provided by chiropractors for diagnosed muscle, nerve and joint problems."

358.   In fact, under the Plan, if prior authorization is obtained, as it was by Milione prior to the treatment of Michael G, Milione, as an out of network provider is entitled to a payment of 60% of the Allowed Amount, which are determined under the Plan as either a percentage of the Centers for Medicare and Medicaid services; a gap methodology which may be based off the providers billed charges; or a negotiated rate between the provider and UHC.

359.   Historically, UHC has paid Milione 60-70% of the billed charges for the Manipulative Treatments provided to Michael G.

360.   When Michael G became a patient of Milione, he signed an assignment of benefits, which provided that:

> I hereby assign all applicable health insurance benefits to which I and/or my dependents are entitle to Provider [defined as Milione]. . . I hereby authorize Provider to submit claims, on my and/or my dependent's behalf, to the benefit plan (or its administrator) listed on the current insurance card I provided to Provider, in good faith. I also hereby instruct my benefit plan (or its administrator) to pay Provider directly for services rendered to me or my dependents.  To the extent that my current policy prohibits direct payment to Provider, I hereby

instruct and direct my benefit plan (or its administrator) to provide documentation stating such non-assignment to myself and Provider upon request. Upon proof of such non-assignment, I instruct my benefit plan (or its administrator) to make out the check to me and mail it directly to Provider.

361.   In addition, Michael G signed an authorization allowing Milione to act as Michael G's "Authorized Representative" in connection with any "claim, right, or cause in action that [she] might have under such insurance policy and/or benefit plan" and the right to "pursue such claim, right or cause of action in connection with said insurance policy and/or benefit plan."

362.   The claims for the denied procedures were delivered to UHC with relevant medical records and other information supporting the claim; however, UHC still refused to pay for these covered benefits, inexplicably claiming on various occasions that the medical records were not received or were not sufficient to support the medical necessity of the procedures.

363.   UHC's denial or underpayment of benefits was not only untimely, but it was also completely improper, arbitrary, and contrary to the benefits plan.

364.   The total for all of the required services that were improperly denied or underpaid by UHC for Michael G is: **$2,074.58**

365.   After the benefits were improperly denied or underpaid, Milione (on behalf of Michael G) went through the entire available appeal process and

inexplicably, all appeals were denied and the required payment remains outstanding.

366.  To date, the claim for benefits for Michael G remains denied and unpaid

*Timur O*

367.  Timur O was a patient of Milione and UHC denied benefits or significantly underpaid for certain services performed on the following dates: December 15, 2021

368.  Timur O was, at all relevant times, a covered beneficiary under a benefit plan pursuant to which, Timur O is entitled to health care benefits.

369.  The chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services provided by Milione are covered services under the UHC plan and accordingly, Milione is entitled to payment for the services provided.

370.  Manipulative Treatment is defined as "a form of care provided by chiropractors for diagnosed muscle, nerve and joint problems."

371.  In fact, under the Plan, if prior authorization is obtained, as it was by Milione prior to the treatment of Timur O, Milione, as an out of network provider is entitled to a payment of 60% of the Allowed Amount, which are determined under the Plan as either a percentage of the Centers for Medicare and Medicaid

services; a gap methodology which may be based off the providers billed charges; or a negotiated rate between the provider and UHC.

372.   Historically, UHC has paid Milione 60-70% of the billed charges for the Manipulative Treatments provided to Timur O.

373.   When Timur O became a patient of Milione, he signed an assignment of benefits, which provided that:

> I hereby assign all applicable health insurance benefits to which I and/or my dependents are entitle to Provider [defined as Milione]. . . I hereby authorize Provider to submit claims, on my and/or my dependent's behalf, to the benefit plan (or its administrator) listed on the current insurance card I provided to Provider, in good faith. I also hereby instruct my benefit plan (or its administrator) to pay Provider directly for services rendered to me or my dependents.  To the extent that my current policy prohibits direct payment to Provider, I hereby instruct and direct my benefit plan (or its administrator) to provide documentation stating such non-assignment to myself and Provider upon request. Upon proof of such non-assignment, I instruct my benefit plan (or its administrator) to make out the check to me and mail it directly to Provider.

374.   In addition, Timur O signed an authorization allowing Milione to act as Timur O's "Authorized Representative" in connection with any "claim, right, or cause in action that [she] might have under such insurance policy and/or benefit plan" and the right to "pursue such claim, right or cause of action in connection with said insurance policy and/or benefit plan."

375.   The claims for the denied procedures were delivered to UHC with relevant medical records and other information supporting the claim; however,

UHC still refused to pay for these covered benefits, inexplicably claiming on various occasions that the medical records were not received or were not sufficient to support the medical necessity of the procedures.

376.   UHC's denial or underpayment of benefits was not only untimely, but it was also completely improper, arbitrary, and contrary to the benefits plan.

377.   The total for all of the required services that were improperly denied or underpaid by UHC for Timur O is: **$3,882.67**

378.   After the benefits were improperly denied or underpaid, Milione (on behalf of Timur O) went through the entire available appeal process and inexplicably, all appeals were denied and the required payment remains outstanding.

379.   To date, the claim for benefits for Timur O remains denied and unpaid

*Peter C*

380.   Peter C was a patient of Milione and UHC denied benefits or significantly underpaid for certain services performed on the following dates: April 9, 2019.

381.   Peter C was, at all relevant times, a covered beneficiary under a benefit plan pursuant to which, Peter C is entitled to health care benefits.

382.   The chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services provided by Milione are

covered services under the UHC plan and accordingly, Milione is entitled to payment for the services provided.

383. Manipulative Treatment is defined as "a form of care provided by chiropractors for diagnosed muscle, nerve and joint problems."

384. In fact, under the Plan, if prior authorization is obtained, as it was by Milione prior to the treatment of Peter C, Milione, as an out of network provider is entitled to a payment of 60% of the Allowed Amount, which are determined under the Plan as either a percentage of the Centers for Medicare and Medicaid services; a gap methodology which may be based off the providers billed charges; or a negotiated rate between the provider and UHC.

385. Historically, UHC has paid Milione 60-70% of the billed charges for the Manipulative Treatments provided to Peter C.

386. When Peter C became a patient of Milione, he signed an assignment of benefits, which provided that:

> I hereby assign all applicable health insurance benefits to which I and/or my dependents are entitle to Provider [defined as Milione]. . . I hereby authorize Provider to submit claims, on my and/or my dependent's behalf, to the benefit plan (or its administrator) listed on the current insurance card I provided to Provider, in good faith. I also hereby instruct my benefit plan (or its administrator) to pay Provider directly for services rendered to me or my dependents. To the extent that my current policy prohibits direct payment to Provider, I hereby instruct and direct my benefit plan (or its administrator) to provide documentation stating such non-assignment to myself and Provider upon request. Upon proof of such non-assignment, I instruct my

benefit plan (or its administrator) to make out the check to me and mail it directly to Provider.

387.   In addition, Peter C signed an authorization allowing Milione to act as Peter C's "Authorized Representative" in connection with any "claim, right, or cause in action that [she] might have under such insurance policy and/or benefit plan" and the right to "pursue such claim, right or cause of action in connection with said insurance policy and/or benefit plan."

388.   The claims for the denied procedures were delivered to UHC with relevant medical records and other information supporting the claim; however, UHC still refused to pay for these covered benefits, inexplicably claiming on various occasions that the medical records were not received or were not sufficient to support the medical necessity of the procedures.

389.   UHC's denial or underpayment of benefits was not only untimely, but it was also completely improper, arbitrary, and contrary to the benefits plan.

390.   The total for all of the required services that were improperly denied or underpaid by UHC for Peter C is: **$3,653.43**

391.   After the benefits were improperly denied or underpaid, Milione (on behalf of Peter C) went through the entire available appeal process and inexplicably, all appeals were denied and the required payment remains outstanding.

392.   To date, the claim for benefits for Peter C remains denied and unpaid

*Caitlyn R*

393.   Caitlyn R was a patient of Milione and UHC denied benefits or significantly underpaid for certain services performed on the following dates: September 10, 2020

394.   Caitlyn R was, at all relevant times, a covered beneficiary under a benefit plan pursuant to which, Caitlyn R is entitled to health care benefits.

395.   The chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services provided by Milione are covered services under the UHC plan and accordingly, Milione is entitled to payment for the services provided.

396.   Manipulative Treatment is defined as "a form of care provided by chiropractors for diagnosed muscle, nerve and joint problems."

397.   In fact, under the Plan, if prior authorization is obtained, as it was by Milione prior to the treatment of Caitlyn R, Milione, as an out of network provider is entitled to a payment of 60% of the Allowed Amount, which are determined under the Plan as either a percentage of the Centers for Medicare and Medicaid services; a gap methodology which may be based off the providers billed charges; or a negotiated rate between the provider and UHC.

398.   Historically, UHC has paid Milione 60-70% of the billed charges for the Manipulative Treatments provided to Caitlyn R.

399.   When Caitlyn R became a patient of Milione, he signed an assignment of benefits, which provided that:

> I hereby assign all applicable health insurance benefits to which I and/or my dependents are entitle to Provider [defined as Milione]. . . I hereby authorize Provider to submit claims, on my and/or my dependent's behalf, to the benefit plan (or its administrator) listed on the current insurance card I provided to Provider, in good faith. I also hereby instruct my benefit plan (or its administrator) to pay Provider directly for services rendered to me or my dependents.  To the extent that my current policy prohibits direct payment to Provider, I hereby instruct and direct my benefit plan (or its administrator) to provide documentation stating such non-assignment to myself and Provider upon request. Upon proof of such non-assignment, I instruct my benefit plan (or its administrator) to make out the check to me and mail it directly to Provider.

400.   In addition, Caitlyn R signed an authorization allowing Milione to act as Caitlyn R's "Authorized Representative" in connection with any "claim, right, or cause in action that [she] might have under such insurance policy and/or benefit plan" and the right to "pursue such claim, right or cause of action in connection with said insurance policy and/or benefit plan."

401.   The claims for the denied procedures were delivered to UHC with relevant medical records and other information supporting the claim; however, UHC still refused to pay for these covered benefits, inexplicably claiming on various occasions that the medical records were not received or were not sufficient to support the medical necessity of the procedures.

402.   UHC's denial or underpayment of benefits was not only untimely, but it was also completely improper, arbitrary, and contrary to the benefits plan.

403.   The total for all of the required services that were improperly denied or underpaid by UHC for Caitlyn R is: **$2,474.04**

404.   After the benefits were improperly denied or underpaid, Milione (on behalf of Caitlyn R) went through the entire available appeal process and inexplicably, all appeals were denied and the required payment remains outstanding.

405.   To date, the claim for benefits for Caitlyn R remains denied and unpaid

*Jochen R*

406.   Jochen R was a patient of Milione and UHC denied benefits or significantly underpaid for certain services performed on the following dates:

March 30, 2021, March 31, 2021, April 5, 2021

407.   Jochen R was, at all relevant times, a covered beneficiary under a benefit plan pursuant to which, Jochen R is entitled to health care benefits.

408.   The chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services provided by Milione are covered services under the UHC plan and accordingly, Milione is entitled to payment for the services provided.

409.   Manipulative Treatment is defined as "a form of care provided by chiropractors for diagnosed muscle, nerve and joint problems."

410.   In fact, under the Plan, if prior authorization is obtained, as it was by Milione prior to the treatment of Jochen R, Milione, as an out of network provider is entitled to a payment of 60% of the Allowed Amount, which are determined under the Plan as either a percentage of the Centers for Medicare and Medicaid services; a gap methodology which may be based off the providers billed charges; or a negotiated rate between the provider and UHC.

411.   Historically, UHC has paid Milione 60-70% of the billed charges for the Manipulative Treatments provided to Jochen R.

412.   When Jochen R became a patient of Milione, he signed an assignment of benefits, which provided that:

> I hereby assign all applicable health insurance benefits to which I and/or my dependents are entitle to Provider [defined as Milione]. . . I hereby authorize Provider to submit claims, on my and/or my dependent's behalf, to the benefit plan (or its administrator) listed on the current insurance card I provided to Provider, in good faith. I also hereby instruct my benefit plan (or its administrator) to pay Provider directly for services rendered to me or my dependents.  To the extent that my current policy prohibits direct payment to Provider, I hereby instruct and direct my benefit plan (or its administrator) to provide documentation stating such non-assignment to myself and Provider upon request. Upon proof of such non-assignment, I instruct my benefit plan (or its administrator) to make out the check to me and mail it directly to Provider.

413.   In addition, Jochen R signed an authorization allowing Milione to act as Jochen R's "Authorized Representative" in connection with any "claim, right, or cause in action that [she] might have under such insurance policy and/or benefit plan" and the right to "pursue such claim, right or cause of action in connection with said insurance policy and/or benefit plan."

414.   The claims for the denied procedures were delivered to UHC with relevant medical records and other information supporting the claim; however, UHC still refused to pay for these covered benefits, inexplicably claiming on various occasions that the medical records were not received or were not sufficient to support the medical necessity of the procedures.

415.   UHC's denial or underpayment of benefits was not only untimely, but it was also completely improper, arbitrary, and contrary to the benefits plan.

416.   The total for all of the required services that were improperly denied or underpaid by UHC for Jochen R is: **$3,017.78**

417.   After the benefits were improperly denied or underpaid, Milione (on behalf of Jochen R) went through the entire available appeal process and inexplicably, all appeals were denied and the required payment remains outstanding.

418.   To date, the claim for benefits for Jochen R remains denied and unpaid.

*Olga K*

419.   Olga K was a patient of Milione and UHC denied benefits or significantly underpaid for certain services performed on the following date: December 31, 2021

420.   Olga K was, at all relevant times, a covered beneficiary under a benefit plan pursuant to which, Olga K is entitled to health care benefits.

421.   The chiropractic services or as is otherwise described in the UHC plans as Habilitative Services or Manipulative Services provided by Milione are covered services under the UHC plan and accordingly, Milione is entitled to payment for the services provided.

422.   Manipulative Treatment is defined as "a form of care provided by chiropractors for diagnosed muscle, nerve and joint problems."

423.   In fact, under the Plan, if prior authorization is obtained, as it was by Milione prior to the treatment of Olga K, Milione, as an out of network provider is entitled to a payment of 60% of the Allowed Amount, which are determined under the Plan as either a percentage of the Centers for Medicare and Medicaid services; a gap methodology which may be based off the providers billed charges; or a negotiated rate between the provider and UHC.

424.   Historically, UHC has paid Milione 60-70% of the billed charges for the Manipulative Treatments provided to Olga K.

425.   When Olga K became a patient of Milione, She signed an assignment of benefits, which provided that:

> I hereby assign all applicable health insurance benefits to which I and/or my dependents are entitle to Provider [defined as Milione]. . . I hereby authorize Provider to submit claims, on my and/or my dependent's behalf, to the benefit plan (or its administrator) listed on the current insurance card I provided to Provider, in good faith. I also hereby instruct my benefit plan (or its administrator) to pay Provider directly for services rendered to me or my dependents.  To the extent that my current policy prohibits direct payment to Provider, I hereby instruct and direct my benefit plan (or its administrator) to provide documentation stating such non-assignment to myself and Provider upon request. Upon proof of such non-assignment, I instruct my benefit plan (or its administrator) to make out the check to me and mail it directly to Provider.

426.   In addition, Olga K signed an authorization allowing Milione to act as Olga K's "Authorized Representative" in connection with any "claim, right, or cause in action that [she] might have under such insurance policy and/or benefit plan" and the right to "pursue such claim, right or cause of action in connection with said insurance policy and/or benefit plan."

427.   The claims for the denied procedures were delivered to UHC with relevant medical records and other information supporting the claim; however, UHC still refused to pay for these covered benefits, inexplicably claiming on various occasions that the medical records were not received or were not sufficient to support the medical necessity of the procedures.

428.   UHC's denial or underpayment of benefits was not only untimely, but it was also completely improper, arbitrary, and contrary to the benefits plan.

429.   The total for all of the required services that were improperly denied or underpaid by UHC for Olga K is: **$3882.67.**

430.   After the benefits were improperly denied or underpaid, Milione (on behalf of Olga K) went through the entire available appeal process and inexplicably, all appeals were denied and the required payment remains outstanding.

431.   To date, the claim for benefits for Olga K remains denied and unpaid

432.   The decisions on the appeals by the various insurance carrier reviewers for the various Milione patients listed above were done in such a way as to suggest that the reviewers were actually looking for ways to deny coverage as opposed to looking for ways to cover the various patients claims.  This is improper under ERISA and under applicable State Law.

433.   The various carriers were required to provide benefits and coverage to Milione's patients for the various nerve studies and other procedures conducted on each patient and by this action, Milione is seeking to enforce the coverage for the paid-for benefits his patients are entitled to under the various plans sold by the various insurance carriers listed in this complaint.

## FIRST CLAIM FOR RELIEF
## AGAINST OXFORD AND OPTUM FOR DENIAL OF BENEFITS –
## ALEXANDER G, MAXWELL M, RAQUEL O, ROBERT P, VANESSA H
## AND ERICA B

434.   Milione repeats the allegations contained in each of the preceding paragraphs of this Complaint.

435.   Claims were submitted to OXFORD for various procedures conducted on Milione's patients, Alexander G, Maxwell M, Raquel O, Robert P, Vanessa H and Erica B on the various dates of service noted in this complaint.

436.   The claims for benefits by Alexander G, Maxwell M, Raquel O, Robert P, Vanessa H and Erica B were improperly denied or underpaid by OXFORD and there is a total amount due and outstanding for the six patient/claimants of **$51,572.24**, which was the total allowed cost of the treatment for the above claims per the various plan documents.

437.   OXFORD wrongfully denied or underpaid the claims for, among other reasons, that the claims were not medically necessary or that Milione had failed to provide medical records to OXFORD – despite the fact that medical records were supplied on multiple occasions.

438.   The positions taken by OXFORD in denying or underpaying the claims were not only contrary to the plan documents, but they were also contrary to the positions that OXFORD had already taken on multiple occasions during the

plan year and in prior plan years at which time OXFORD had paid the appropriate amounts for the procedures and requested benefits.

439. Inexplicably, despite a full appeal process, OXFORD has steadfastly maintained its denial or underpayment of benefits.

440. OXFORD's denial or underpayment of benefits was not in the best interest of the patients and was a threat to their well-being.

441. Following the denial or underpayment of the claim for benefits to under the OXFORD plans, all required administrative remedies under ERISA Alexander G, Maxwell M, Raquel O, Robert P, Vanessa H and Erica B were exhausted.

442. As a proximate result of the denial or underpayment of medical benefits, Milione has been damaged in the amount of all medical bills incurred for the various procedures, in a total sum to be proven at the time of trial, but believed to be **$51,572.24**.

443. As a further direct and proximate result of OXFORD's improper determination regarding the various procedures, Milione, in pursuing this action, has been required to incur attorney's fees and costs. Pursuant to 29 U.S.C. § 1132(g)(1), Milione is entitled to have those fees and costs paid for by UHC.

**WHEREFORE**, Milione demands relief under ERISA as follows:

a. For compensatory damages, including all amounts owed to date for the required procedures for Pelster and Wang totaling **$51,572.24;**

b.   A declaration that OXFORD was and is required to pay for the various procedures at issue;

c.   For attorneys fees as permitted by law;

d.   Interest and costs of suit;

e.   Such other relief that the Court deems appropriate.

## SECOND CLAIM FOR RELIEF
## AGAINST UHC AND OPTUM  FOR DENIAL OF BENEFITS – WENDY H, VIPUL P, XINYU P, MONICA A, PHILIP L, SIMON A, TYLER K, RAYMOND VN, CASSANDRA C, ELIZABETH L, DIETER L, EVAN H, EVELYSE F, HYE KY, MARK L, ONUR I, BARBARA N, JIN F, MICHAEL G, PETER C, TIMUR O, CAITLYN R, JOCHEN R AND OLGA K

444.   Milione repeats the allegations contained in each of the preceding paragraphs of this Complaint.

445.   Claims were submitted to UHC for various procedures conducted on Milione's patients, Wendy H, Vipul P, Xinyu P, Monica A, Philip K, Simon A, Tyler K, Raymond VN, Cassandra C, Elizabeth L, Dieter L, Evan H, Evelyse F, Hye KY, Mark L, Onur I, Barabara N, Jin F, Michael G, Peter C, Timur O, Caitlyn R, Jochen R and Olga K for the various dates of service noted above in this complaint.

446.   The claims for benefits submitted by Wendy H, Vipul P, Xinyu P, Monica A, Philip K, Simon A, Tyler K, Raymond VN, Cassandra C, Elizabeth L, Dieter L, Evan H, Evelyse F, Hye KY, Mark L, Onur I, Barabara N, Jin F, Michael G, Peter C, Timur O, Caitlyn R, Jochen R and Olga K were improperly denied or

underpaid by UHC and there is a total amount due and outstanding for the twenty four claimants of **$365,421.72**, which was the total cost of treatment for the various claim dates.

447.   UHC wrongfully denied the claims or underpaid the claims for, among other reasons, that the claims were not medically necessary and/or that Milione had failed to provide medical records to support the claim, despite the fact that medical records were provided on numerous occasions.

448.   The positions taken by UHC in denying or underpaying the claims were not only contrary to the various plan documents, but they were also contrary to positions that UHC had already taken on multiple occasions during the plan year and in the prior plan years at which time UHC had paid the appropriate amounts for the procedures and requested benefits.

449.   Inexplicably, despite a full and complete appeal process, UHC has steadfastly maintained its denial or underpayment of benefits.

450.   UHC's denial or underpayment of benefits was not in the best interest of the patients and was a threat to their wellbeing.

451.   Following the denial or underpayment of the claim for benefits to Wendy H, Vipul P, Xinyu P, Monica A, Philip K, Simon A, Tyler K, Raymond VN, Cassandra C, Elizabeth L, Dieter L, Evan H, Evelyse F, Hye KY, Mark L, Onur I, Barabara N, Jin F, Michael G, Peter C, Timur O, Caitlyn R, Jochen R and

Olga K under the UHC plans, all required administrative remedies under ERISA were exhausted.

452.   As a proximate result of the denial or underpayment of medical benefits, Milione has been damaged in the amount of all medical bills incurred for the various procedures, in a sum to be proven at the time of trial, but believe to be **$365,421.72.**

453.   As a further direct and proximate result of UHC's improper determination regarding the various procedures, Milione, in pursuing this action, has been required to incur attorney's fees and costs.   Pursuant to 29 U.S.C. § 1132(g)(1), Milione is entitled to have those fees and costs paid for by Cigna.

**WHEREFORE**, Milione demands relief under ERISA as follows:

a.   For compensatory damages, including all amounts owed to date for the required and covered nerve studies and related procedures for Litman, Grande, and Agrawal totaling **$365,421.72**;

b.   A declaration that Optum/Oxford was and is required to pay for the required nerve studies and related procedures;

c.   For attorneys fees as permitted by law;

d.   Interest and costs of suit;

e.   Such other relief that the Court deems appropriate.

Dated:  October 24, 2023                    **THE MILUN LAW FIRM, LLC**
                                            Attorneys for Plaintiff


                                    By:   */s/ Ryan Milun*

RYAN MILUN
THE MILUN LAW FIRM, LLC
20 Commerce Drive, Suite 135
Cranford, NJ 07016
Ph: 862-702-5010 ex 1001
Ryan.milun@milunlaw.com

## <u>RULE 11 CERTIFICATION</u>

RYAN MILUN declares as follows:

I am an attorney and owner of the law firm of The Milun Law Firm, LLC, the attorneys for plaintiff in this action.  Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 24, 2023

*/s/ Ryan Milun*
RYAN MILUN